RACHEL E. KAUFMAN (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

[Additional counsel appear on signature page]

*Attorneys for Plaintiff Lucine Trim and the*
*Proposed Classes*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| LUCINE TRIM, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **COMPLAINT FOR INJUNCTION AND DAMAGES** |
| v. | **Class Action** |
| MAYVENN, INC., | **JURY TRIAL DEMAND** |
| Defendant. | |

Plaintiff Lucine Trim, by her undersigned counsel, for this class action complaint against Defendant Mayvenn, Inc. ("Mayvenn"), and its present, former, and future direct and indirect parents, subsidiaries, affiliates, agents, and related entities, alleges as follows:

## I.   INTRODUCTION

1.   This case arises from Defendant's repeated, unsolicited telemarketing to Plaintiff in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive calling practices, *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 371 (2012).

2.   Defendant used an automated telephone dialing system ("ATDS") to send text messages, including to individuals on the National Do Not Call Registry, tactics among those that inspired Congress to enact the TCPA and that most infuriate Americans to this day.

3.   Automated telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, and Plaintiff brings this action on behalf of a proposed class of persons—defined more specifically herein—who received such calls promoting Defendant.

4.   Plaintiff and proposed class members did not provide prior express written consent to receive these calls.

## II.    PARTIES

5.   Plaintiff is a natural person.

6.   Plaintiff is a "person" within the meaning of 47 U.S.C. § 153(39).

7.   Plaintiff resides in California.

8.   Defendant is a California corporation.

9.   Defendant's principal place of business is 714 Franklin St. Suite 100 #239, Oakland, CA 94612.

## III.    JURISDICTION AND VENUE

10. This Court has personal jurisdiction over Defendant because its principal place of business is in California.

11. Jurisdiction: This Court has federal-question subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute.  *Mims*, 565 U.S. at 372.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to Plaintiff's claims—namely, the transmission of the challenged telemarketing—occurred in this District.

13. Intradistrict Assignment: Assignment to this Division is proper pursuant to Civil Local Rule 3-2(c) because a substantial part of the events or omissions that give rise to Plaintiff's claims—namely, the transmission of the challenged telemarketing—occurred in this Division.

## IV.    FACTS

### A.    The Enactment of the TCPA and the FCC's Regulations Thereunder

14. Enacted in 1991, the TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using

an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1).

15. Calls made by an ATDS or with a prerecorded or artificial voice are referred to as "robocalls" by the Federal Communications Commission ("FCC") and herein.

16. Encouraging people to hold robocallers accountable on behalf on their fellow Americans, the TCPA provides a private cause of action to persons who receive such calls. 47 U.S.C. § 227(b)(3).

17. In enacting the TCPA, Congress found: "Evidence compiled by the Congress indicates that residential telephone subscribers consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, 105 Stat. 2394 § 2(10).

18. Congress continued: "Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

19. The TCPA's sponsor described computerized calls as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1044 (9th Cir. 2018).

20. According to findings by the FCC, which Congress vested with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live-solicitation calls and can be costly and inconvenient.

21. The FCC has made clear that "prior express written consent" is required before making telemarketing robocalls to wireless numbers. Specifically, it ordered:

> [A] consumer's written consent to receive telemarketing robocalls
> must be signed and be sufficient to show that the consumer: (1)

1
2
3
4
5

> received clear and conspicuous disclosure of the consequences of
> providing the requested consent, *i.e.*, that the consumer will
> receive future calls that deliver prerecorded messages by or on
> behalf of a specific seller; and (2) having received this information,
> agrees unambiguously to receive such calls at a telephone number
> the consumer designates. In addition, the written agreement must
> be obtained without requiring, directly or indirectly, that the
> agreement be executed as a condition of purchasing any good or
> service.

6
7

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*,

8

27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted).

9

22. Additionally, the TCPA outlaws unsolicited telemarketing (robocalls or otherwise) to

10

phone numbers on the NDNCR.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).  Encouraging

11

people to hold telemarketers accountable on behalf on their fellow Americans, the TCPA

12

provides a private cause of action to persons who receive such calls.  47 U.S.C. § 227(c)(5).

**B.    The Worsening Problem of Robocalls and Spam Texts**

13

23. Unfortunately, the problems Congress identified in 1991 have only grown worse in

14

recent years.

15

24. "Month after month, unwanted [communications], both telemarketing and

16

informational, top the list of consumer complaints received by the [Federal Communications]

17

Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection*

18

*Act of 1991*, 30 FCC Rcd. 7961, 7991 ¶ 1 (2015).

19

25. "Robocalls and telemarketing calls are currently the number one source of consumer

20

complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016),

21

https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC

22

Chairman).

23

26. "The FTC receives more complaints about unwanted calls than all other complaints

24

combined." Comment of the Staff of the Federal Trade Commission's Bureau of Consumer

25

Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of*

26

*1991, Notice of Proposed Rulemaking*, CG Docket No. 02-278, at p. 2; FCC 16-57 (June 6,

27

2016), *available at* https://www.ftc.gov/system/files/documents/advocacy_documents/comment-

28

COMPL. INJUNCTION AND DAMAGES
*Trim v. Mayvenn, Inc.*

staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

27. "During the past fiscal year, the FTC continued to receive many consumer complaints about telemarketing robocalls." Federal Trade Commission, *FTC Releases FY 2019 National Do Not Call Registry Data Book* (Oct. 17, 2019), https://www.ftc.gov/news-events/press-releases/2019/10/ftc-releases-fy-2019-national-do-not-call-registry-data-book (noting the FTC's receipt of 3.8 million complaints about robocalls in its fiscal year 2019).

28. Like other newspapers, *The New York Times* has been writing and reporting on the exploding number of robocall complaints filed by consumers and widespread consumer outrage about illegal telemarketing. Gail Collins, *Let's Destroy Robocalls*, N.Y. Times (Mar. 1, 2019), https://www.nytimes.com/2019/03/01/opinion/robocall-scams.html; Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html.

29. The harm from of illegal robocalls is "is at least $3 billion per year from lost time alone." Babette Boliek & Eric Burger, *Beating Back Unwanted Robocalls*, FCC (June 5, 2019), https://www.fcc.gov/news-events/blog/2019/06/05/beating-back-unwanted-robocalls (statement of FCC Chief Economist and FCC Chief Technology Officer).

30. In fact, the wasted hours exceed such time lost outright, because "little surges of the stress hormone cortisol" from interruptions from smartphones result in elevated heart rates, sweaty hands, tightened muscles, anxiety, and distraction, a "switch cost" that weighs on a person even after the interruption ends, reducing his or her efficiency by 40%. Stephanie Stahl, *Constant Interruptions from Smartphone Can Impact Brain Chemistry, Scientists Say*, CBS Philly (May 29, 2018), https://philadelphia.cbslocal.com/2018/05/29/scientists-constant-interruptions-smartphone-impact-brain-chemistry/.

31. Robocalls are overwhelming hospitals and patients, threatening a new kind of health crisis. Tony Romm, *Robocalls Are Overwhelming Hospitals and Patients, Threatening a New Kind of Health Crisis*, Wash. Post (June 17, 2019),

https://www.washingtonpost.com/technology/2019/06/17/robocalls-are-overwhelming-hospitals-patients-threatening-new-kind-health-crisis/.

32. Recognizing that the havoc wreaked by unwanted robocalls is spiraling out of control, Congress recently passed, and the President signed into law, legislation strengthening the TCPA. Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act ("TRACED Act"), 116 Pub. L. No. 105, 133 Stat. 3274 (amending 47 U.S.C. § 227).

**C.    Defendant's Conduct and Contact of the Plaintiff**

33. Defendant calls numbers even though they are assigned to cellular telephone services.

34. Defendant calls numbers even though they are listed on the NDNCR.

35. Recipients of these calls, including Plaintiff and proposed class members, had not provided prior express written consent to receive them.

36. Defendant's calls at issue were not necessitated by an emergency.

37. Defendant's calls at issue were made to numbers within the United States.

38. For every 18 million robocalls, there's only one TCPA lawsuit in federal court. *Compare* Mike Snider, *Robocalls Rang up a New High in 2019. Two or More Daily Is Average in Some States*, USA Today (Jan. 15, 2020), https://www.usatoday.com/story/tech/2020/01/15/robocalls-americans-got-58-5-billion-2019/4476018002/ (58.5 billion robocalls), *with* WebRecon, *WebRecon Stats for Dec 2019 and Year in Review: How Did Your Favorite Statutes Fare?*, https://webrecon.com/webrecon-stats-for-dec-2019-and-year-in-review-how-did-your-favorite-statutes-fare/ (last visited Mar. 25, 2020) (3,267 TCPA complaints).

39. Plaintiff is the owner, payor, and user of a phone number that begins "(818) 471." The calls to her described herein were to that number.

40. Text messages are calls for purposes of the TCPA.

41. Defendant called Plaintiff twice.

42. Both text messages are below:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



43. A text message sent from an SMS short code is characteristic of a message sent using an ATDS that dials a large volume of telephone numbers from a prepared list.

44. Furthermore, the fact that automated responses were available to the text messages indicates that the calls were made with an ATDS.

45. The Plaintiff's cellular telephone number has been on the NDNCR since December 3, 2019.

46. Plaintiff's cellular telephone number is for personal use and has never been associated by Plaintiff with a business.

47. The text messages advertised the commercial availability of the Defendant's goods and services.

48. Plaintiff has never provided prior express written consent to receive Defendant's calls.

**D.**    **The Harm Caused by Defendant's Automated Telemarketing**

49. The conduct alleged herein:

        a.      invaded Plaintiff's and proposed class members' privacy and solitude;

        b.      wasted Plaintiff's and proposed class members' time;

        c.      annoyed Plaintiff and proposed class members;

        d.      harassed Plaintiff and proposed class members;

        e.      consumed the battery life and memory of Plaintiff's and proposed class members' cellular telephones;

        f.      cost some proposed class members money, either outright or in the form of spent minutes in a limited-minute monthly cellular service contract.

## V.    CLASS ACTION ALLEGATIONS

50. Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this case on behalf of two classes defined as follows:

<u>Automated Call Class</u>

    All persons in the United States to whom (a) one or more calls (including text messages) were from or on behalf of Defendant; (b) to a cellular telephone number; (c) for a substantially similar purpose that Defendant called Plaintiff; (d) using a calling platform substantially similar to the platform Defendant used to call Plaintiff and/or an artificial or prerecorded voice; (e) between the date four years before the filing of the original complaint in this case and the first day of trial.

<u>National Do Not Call Registry Class</u>

    All persons in the United States whose (a) telephone numbers were on the National Do Not Call Registry for at least 31 days, and (b) who received more than one telemarketing call from or on behalf of Defendant (c) within a 12-month period, (d) for a substantially similar purpose that Defendant called Plaintiff (e) between the date four years before the filing of the original complaint in this case and the first day of trial.

Notwithstanding anything herein to the contrary, excluded from the class are Defendant, any entity in which Defendant has a controlling interest or that has a controlling interest in

Defendant, Defendant's legal representatives, assignees, and successors, the judges to whom this case is assigned, and the employees and immediate family members of all of the foregoing.

51. Plaintiff is a member and proposed representative of the classes.

52. The class is identifiable through phone records and phone number databases.

53. The class is so numerous that joinder of all its members is impracticable.

54. The class numbers in the thousands, or more.

55. Outcome-determinative questions of fact and law have the same answers for all class members. These questions and answers include but are not limited to the following:

    a.    Did Defendant call the class member at a cellular telephone number?

    b.    Did Defendant call the class member at a telephone number registered on the NDNCR?

    c.    Did Defendant call the class member using an ATDS and/or an artificial or prerecorded voice?

    d.    Was the purpose of the calls to the class member telemarketing?

    e.    Did Defendant call the class member more than one time in a 12-month period more than 30 days after they registered their telephone number on the NDNCR?

    f.    Were the calls to the class member necessitated by an emergency?

    g.    Did Defendant call the class member on one or more dates such that the class member had a TCPA claim that was not time-barred on the date that the original complaint in this action was filed?

    h.    Had the class member provided prior express written consent before being called?

    i.    What is the minimum statutory damages per violation the class member is entitled to?

    j.    Were Defendant's violations of the class member's rights under the TCPA knowing and willful?

    k.    How much in statutory damages per violation should the Court award the class member?

l.      Should Defendant be enjoined?

56. The foregoing common issues predominate over any individual issues, making a class action the superior means of resolution.  Adjudication of these common issues in a single action has important advantages, including judicial economy, efficiency for class members, and classwide *res judicata* for Defendant. Classwide relief is essential to compel Defendant to comply with the TCPA.

57. Plaintiff's claims are typical of the claims of the class.  Plaintiff's claims and those of the class arise out of the same automated telemarketing by Defendant and seek the same legal and equitable remedies.

58. Plaintiff will fairly and adequately protect the interests of the class.

59. Plaintiff has retained competent and capable counsel experienced in TCPA class action litigation.

60. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the class and have the financial resources to do so.

61. The interests of Plaintiff and her counsel are aligned with those of the proposed class.

62. The interest of individual members of the class in individually controlling the prosecution of separate claims against Defendant is small because the damages in an individual action (up to $1,500 per TCPA violation) are dwarfed by the cost of prosecution.

63. The forum is a desirable, efficient location in which to resolve the dispute.  Plaintiff lives in California.  Defendant is headquartered in the forum.  The forum is on the cutting edge of managing class actions.  Within the forum's district and magistrate judges can be found experience in managing TCPA class actions, including motion practice, class certification, discovery, ADR, and trial.

64. No significant difficulty is anticipated in the management of this case as a class action.  Management of the claims at issue is likely to present significantly fewer difficulties than are presented in many class actions because the calls at issue are automated (and thus uniform) and because the TCPA articulates bright-line standards for liability and damages.

65. Defendant has acted on grounds generally applicable to the class, thereby making final injunctive relief and corresponding declaratory relief appropriate on a classwide basis.

## VI.  FIRST CLAIM FOR RELIEF
### (Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1))
### On Behalf of Plaintiff and the Class

66. Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

67. Defendant violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to the cellular telephone numbers of Plaintiff and members of the class using an ATDS and/or artificial or prerecorded voice.

68. Plaintiff and class members are entitled to an award of up to $1,500 in damages for each knowing or willful violation and of $500 for each other violation.  47 U.S.C. § 227(b)(3)(B).

69. Plaintiff and class members are entitled to and seek an injunction prohibiting Defendant and all other persons who are in active concert or participation with it from violating the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency calls to any cellular telephone number using an ATDS and/or artificial or prerecorded voice.

## VII.  SECOND CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violations of 47 U.S.C. § 227)
### (On Behalf of Plaintiff and the National Do Not Call Registry Class)

70. Plaintiff repeats the allegations of paragraphs 1 through 64 of this Complaint and incorporates them by reference herein.

71. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to the Plaintiff and the Class despite their numbers being on the National Do Not Call Registry.

72. The Defendant's violations were negligent, willful, or knowing.

73. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

74. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, except for emergency purposes, in the future.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of all class members, prays for judgment against Defendant as follows:

A.    Certification of the proposed classes;

B.    Appointment of Plaintiff as representative of the classes;

C.    Appointment of the undersigned counsel as counsel for the classes;

D.    A declaration that actions complained of herein violate the TCPA;

E.    An order enjoining Defendant and all other persons who are in active concert or participation with it from engaging in the conduct set forth herein;

F.    An award to Plaintiff and the class of damages, as allowed by law;

G.    Leave to amend this complaint to conform to the evidence presented at trial; and

H.    Orders granting such other and further relief as the Court deems necessary, just, and proper.

## IX.    DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

1    RESPECTFULLY SUBMITTED AND DATED on June 15, 2020.

2                                                By: */s/ Rachel E. Kaufman*
3                                                    Rachel E. Kaufman
                                                     KAUFMAN P.A.
4
                                                     Anthony I. Paronich, *Pro Hac Vice Forthcoming*
5                                                    anthony@bparonichlaw.com
                                                     PARONICH LAW, P.C.
6                                                    350 Lincoln Street, Suite 2400
7                                                    Hingham, Massachusetts 02043
                                                     Telephone: (617) 485-0018
8                                                    Facsimile: (508) 318-8100

9                                                    Andrew W. Heidarpour, *Pro Hac Vice*
10                                                   *Forthcoming*
                                                     AHeidarpour@HLFirm.com
11                                                   HEIDARPOUR LAW FIRM, PPC
12                                                   1300 Pennsylvania Ave. NW, 190-318
                                                     Washington, DC 20004
13                                                   Telephone: (202) 234-2727

14                                                   *Attorneys for Plaintiff and the Proposed Classes*

15

16

17

18

19

20

21

22

23

24

25

26

27

28