1
2
3
4          IN THE UNITED STATES DISTRICT COURT
5        FOR THE NORTHERN DISTRICT OF CALIFORNIA
6

7   LUCINE TRIM, individually and on          Case No. 20-cv-03917-MMC
    behalf of all others similarly situated,
8                                             **AMENDED***
                  Plaintiff,                  **ORDER GRANTING IN PART AND**
9                                             **DENYING IN PART DEFENDANT'S**
           v.                                 **MOTION TO DISMISS, OR IN THE**
10                                            **ALTERNATIVE, STAY; CONTINUING**
    MAYVENN, INC.,                            **CASE MANAGEMENT CONFERENCE**
11
                  Defendant.
12

13         Before the Court is defendant Mayvenn, Inc.'s ("Mayvenn") "Motion to Dismiss

14  Plaintiff's Amended Complaint, or in the Alternative, to Stay This Action," filed September

15  8, 2020.  Plaintiff Lucine Trim ("Trim") has filed opposition, to which Mayvenn has replied.

16  Having considered the papers filed in support of and in opposition to the motion, the

17  Court rules as follows.[1]

18                                **BACKGROUND**

19         In the operative complaint, the First Amended Complaint ("FAC"), Trim alleges she

20  has a cellular telephone number "for personal use," which number "has been on the

21  NDNCR [National Do Not Call Registry] since December 3, 2019."  (See FAC ¶¶ 45-46.)

22  Trim alleges that, on April 24, 2020, she received the following text message from

23  Mayvenn on her cellular phone:

24         When you want something fun, quick and protective for your hair?  WIG.
           Shop these ready to wear units: https://mvnn.co/uJwLvlY - Reply HELP for
25

26         * The sole amendments are to substitute "July 16, 2021" for "July 17, 2021" and
    "July 9, 2021" for "July 10, 2021."  (See pp. 10:15-16.)
27

28         [1] By order filed October 9, 2020, the Court took the matter under submission.

help, STOP to quit.

(See id. ¶ 42.)  Trim further alleges that, on May 4, 2020, she received a second text message from Mayvenn on her cellular phone, which read as follows:

> Mother's day is soon.  Forget the florist, what she really wants is a wig.  No-contact delivery goes right to her door: https://mvnn.co/9tTRKWf - Reply HELP for help, STOP to quit.

(See id.)

According to Trim, "[a] text message sent from an SMS short code," like the two text messages she received from Mayvenn, is "characteristic" of a message sent using an "automated telephone dialing system" ("ATDS"), which system "dials a large volume of telephone numbers from a prepared list."  (See FAC ¶ 43.)  Trim also alleges "the fact that automated responses were available to the text messages indicates that the [messages] were made with an ATDS."  (See id. ¶ 44.)

Trim alleges she "has never provided prior express written consent to receive" text messages from Mayvenn, and the messages "invaded" her "privacy and solitude," "wasted" her time, "annoyed" her, "harassed" her, and "consumed the battery life and memory of [her] . . . cellular telephone[]."  (See id. ¶¶ 48-49.)

Based on the above allegations, Trim asserts, pursuant to the Telephone Consumer Protection Act ("TCPA"), two claims on behalf of herself and two classes, namely, an "Automated Call Class" and a "National Do Not Call Registry Class."

## DISCUSSION

By the instant motion, Mayvenn seeks an order dismissing the FAC, or, in the alternative, staying the instant action pending the Supreme Court's decision in Facebook, Inc. v. Duguid, No. 19-511 (S. Ct. 2019), and the Federal Communications Commission's ("FCC") "declaratory ruling interpreting the definition of an ATDS."  (See Mot. at 1:13-17, 1:23-24.)

### A.    Motion to Dismiss

Mayvenn argues the FAC is subject to dismissal, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, for lack of standing.  Specifically, Mayvenn contends,

United States District Court
Northern District of California

Trim's allegations are "insufficient to establish injury-in-fact." (See Mot. at 3:2-3); see also Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011) (holding challenge to Article III standing properly brought by motion under Rule 12(b)(1)).

To establish Article III standing, a plaintiff must have "suffered an injury in fact" that is "fairly traceable to the challenged conduct" and is "likely to be redressed by a favorable judicial decision." See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). The "injury in fact" must be both "concrete and particularized." See id. at 1548 (internal quotation and citation omitted). To be "particularized," an injury "must affect the plaintiff in a personal and individual way"; to be "concrete," the "injury must be de facto; that is, it must actually exist." See id. (internal quotations and citations omitted). Although Article III standing requires a concrete injury, a "violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact . . . [and] a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." See id. at 1549 (emphasis in original).

In Van Patten v. Vertical Fitness Group, LLC, 847 F.3d 1037 (9th Cir. 2017), the Ninth Circuit, noting "Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm," held "a violation of the TCPA is a concrete, de facto injury." See id. at 1043. Here, Trim, as noted, alleges she received unsolicited telemarketing messages from Mayvenn, and, relying on Van Patten, asserts she "need not allege any additional harm." (See Opp. at 2:24-3:2 (quoting Van Patten).)

Nevertheless, Mayvenn argues, Trim's claims fail because she "does not allege actually reading, reviewing, or spending any time on [the] text messages" (see Mot. at 2:23-24), and, "[b]ased on recent trends in TCPA jurisprudence, [Trim's] alleged receipt of two text messages does not establish Article III standing" (see id. at 2:14-15). As set forth below, however, the cases on which Mayvenn relies in support of such argument (see Mot. at 3:5-5:9), are readily distinguishable.

First, Shuckett v. DialAmerica Marketing, Inc., No. 17-cv-2073-LAB, 2019 WL 3429184 (S.D. Cal. July 29, 2019), concerned a telephone call, not a text message, and

the district court, in granting the defendant's motion for summary judgment, found there was no evidence the plaintiff therein was aware of the call, which "went unanswered." See id. at *3.  Next, Selby v. Ocwen Loan Servicing, LLC, No. 3:17-CV-973-CAB-BLM, 2017 WL 5495095 (S.D. Cal. Nov. 16, 2017), concerned debt collection calls, which the District Court held were not covered under the TCPA.  See id. at *3 (finding "the TCPA was not intended to protect any concrete interests associated with calls from debt collectors or creditors").  Mayvenn's reliance on the remaining cases likewise is misplaced, as each such case relied on the law of the Eleventh Circuit, which, unlike the Ninth Circuit, has held "receiving a single text message" is "not a basis for invoking the jurisdiction of federal courts."  See Salcedo v. Hanna, 936 F.3d 1162, 1172 (11th Cir. 2019) (holding "[t]he chirp, buzz, or blink of a cell phone receiving a single text message" is insufficient to state a concrete harm; noting Ninth Circuit "has reached the opposite conclusion"); see, e.g., Fenwick v. Orthopedic Specialty Inst., PLLC, No. 19-CV-62290, 2020 WL 913321, at *5 (S.D. Fla. Feb. 4, 2020) (dismissing TCPA claim alleging receipt of two text messages; citing Salcedo).

Accordingly, the Court finds Trim's TCPA claims are not subject to dismissal for lack of standing.

**B.     Motion to Stay**

**1.     Stay Pending Decision in Facebook**

Mayvenn argues the Court should stay the instant action pending the Supreme Court's decision in Facebook, wherein the Supreme Court will resolve the following issue:

> Whether the definition of ATDS in the TCPA encompasses any device that can "store" and "automatically dial" telephone numbers, even if the device does not "us[e] a random or sequential number generator."

See Facebook, No. 19-511 (S. Ct. Oct. 17, 2019), Pet. for Writ of Cert. at ii.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).  A court may "find it is efficient for its own docket and the fairest course for the parties to

1   enter a stay of an action before it, pending resolution of independent proceedings which

2   bear upon the case," even if the "issues in such proceedings" are not "necessarily

3   controlling of the action before the court."  See Leyva v. Certified Grocers of Cal., Ltd.,

4   593 F.2d 857, 863-64 (9th Cir. 1979).

5          The proponent of a stay bears the burden of showing such relief is warranted.

6   See Clinton v. Jones, 520 U.S. 681, 708 (1997).  In deciding whether to stay proceedings

7   pending resolution of another action, a district court must weigh "the competing interests

8   which will be affected by the granting or refusal to grant a stay," including (1) "the

9   possible damage which may result from the granting of a stay," (2) "the hardship or

10   inequity which a party may suffer in being required to go forward," and (3) "the orderly

11   course of justice measured in terms of the simplifying or complicating of issues, proof,

12   and questions of law which could be expected to result from a stay."  See Lockyer v.

13   Mirant Corp., 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting CMAX, Inc. v. Hall, 300 F.2d

14   265, 268 (9th Cir. 1962)).

15          The Court considers each of the above-listed factors, in turn.

### a.     Damage Resulting from Granting of Stay

17          The Court first considers the "possible damage which may result from the granting

18   of a stay."  See Lockyer, 398 F.3d at 1110 (internal quotation and citation omitted).

19          Here, Trim argues "[a] stay risks the loss of relevant evidence" and "needlessly

20   delays potential recovery of [Trim] and putative class members."  (See Opp. to Mot. at

21   9:1-2, 10:10-11.)  The Court is not persuaded.  Trim's concern that the requested stay will

22   result in a loss of evidence is, in the absence of supporting facts, no more than

23   speculation, particularly given the likely short duration of the stay.  See Docket,

24   Facebook, No. 19-511 (U.S. Sept. 16, 2020) (setting oral argument in Facebook for

25   December 8, 2020); Aleisa v. Square, Inc., No. 20-cv-00806-EMC, 2020 WL 5993226, at

26   *7 (N.D. Cal. Oct. 9, 2020) (granting stay pending decision in Facebook; noting, "[t]he

27   Supreme Court is likely to issue an opinion on this question in the first half of 2021").

28   Further, the "[m]ere delay in receiving damages is an insufficient basis to deny a stay."

See Ludlow v. Flowers Foods, Inc., No. 18-cv-1190-JLS, 2020 WL 773253, at *2 (S.D. Cal. Feb. 18, 2020).

Accordingly, the Court finds the first factor weighs in favor of a stay.

### b.   Hardship or Inequity Party May Suffer Absent Stay

The Court next considers "the hardship or inequity which a party may suffer in being required to go forward." See Lockyer, 398 F.3d at 1110 (internal quotation and citation omitted).

Here, Mayvenn contends that, "[a]bsent a stay, at a minimum, [it] would be required to spend significant time and resources conducting discovery regarding text message platforms based on a governing legal standard that is likely to change within the year," and that "the parties would similarly be forced to litigate the ATDS issue through summary judgment or trial, incurring substantial costs." (See Mot. at 9:7-12.)  In response, Trim, citing Lockyer, contends, "[a]s a matter of well-established Ninth Circuit law, being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." (See Opp. at 8:5-8 (internal quotation and citation omitted).)  In Lockyer, however, the plaintiff had, unlike here, made out a "fair possibility" of harm, see Lockyer, 398 F.3d at 1112, and, "when the opponent does not adduce evidence that it will be harmed by a stay[,] . . . courts have considered the moving party's burden in litigating the case to be a legitimate form of hardship," see Arris Sols., Inc. v. Sony Interactive Entm't LLC, No. 17-CV-01098-EJD, 2017 WL 4536415, at *2 (N.D. Cal. Oct. 10, 2017) (internal quotation and citation omitted).

Accordingly, the Court finds the second factor weighs in favor of a stay.

### c.   Orderly Course of Justice

Lastly, the Court considers "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." See Lockyer, 398 F.3d at 1110 (internal quotation and citation omitted).

In that regard, Trim argues a stay "would not lead to a comprehensive or

expedient disposition of the case," because, according to Trim, a decision in <u>Facebook</u> will have "absolutely no impact on [her] National Do Not Call Registry claim."  (<u>See</u> Opp. 5:7-8, 5:23-25 (internal quotation, citation, and emphasis omitted).)[2]  Even if a decision in <u>Facebook</u> will not resolve the instant action in its entirety, however, the parties do not dispute that such decision will provide "valuable assistance to the court in resolving" Trim's TCPA claim alleging Mayvenn's use of an ATDS.  <u>See</u> <u>Leyva</u>, 593 F.2d at 863; <u>see also</u> <u>Gallion v. Charter Commc'ns Inc.</u>, 287 F. Supp. 3d 920, 932 (C.D. Cal. 2018) (granting stay pending D.C. Circuit's decision as to "what constitutes an ATDS"; noting "the D.C. Circuit's decision will significantly impact one ground for defendants' potential liability in this putative class action and will at least define the scope of discovery regarding ATDS").

The district court cases on which Trim relies in arguing a stay is not appropriate where such stay would not lead to a "comprehensive" disposition of the case (<u>see</u> Opp. to Mot. at 5:7-8 (internal quotation and citation omitted)), are readily distinguishable on their facts.  In <u>Izor v. Abacus Data Systems, Inc.</u>, No. 19-cv-01057-HSG, 2020 U.S. Dist. LEXIS 64454 (N.D. Cal. Apr. 13, 2020), there was no more than the movant's "hope" that the issue raised in the district court would even be decided by the Supreme Court.  <u>See</u> <u>id.</u> at *4.  In <u>Branch Banking & Trust Co. v. Fishing Vessel TOPLESSS</u>, No. ELH-12-2364, 2012 WL 6019288 (D. Md. Nov. 29, 2012), the district court denied a motion to stay proceedings on a federal claim pending the defendant's appeal of a state court's denial of its motion to set aside a default on a related state law claim, where the defendant had not "articulated any reason to suggest that a resolution in its favor [was] imminent, or even likely" on the default, let alone on the merits of the common issue.  <u>See</u> <u>id.</u> at *5.  In <u>Hunt</u>

---

[2] To the extent Trim contends a decision in <u>Facebook</u> would not affect the holding in <u>Marks v. Crunch San Diego, LLC</u>, 904 F.3d 1041 (9th Cir. 2018), the Court notes the relevant holding is the same in both cases, and, indeed, the Ninth Circuit, in reaching its decision in <u>Facebook</u>, relied on its decision in <u>Marks</u>.  <u>See</u> <u>Facebook</u>, 926 F.3d at 1151. Consequently, any decision as to that holding in <u>Facebook</u> will, in effect, constitute a decision as to that holding in <u>Marks</u> as well.

United States District Court
Northern District of California

Valley Baptist Church, Inc. v. Baltimore County, Maryland, No. ELH-17-804, 2018 WL 1570256 (D. Md. Mar. 29, 2018), the district court denied a motion to stay pending a decision in a state court case where the state court proceedings "had already been stayed," and, apparently, in favor of "allow[ing] the federal case to proceed first." See id. at *3.

In the three remaining cases, the requests for a stay were based on Facebook, which, at the time those requests were made, was at a much earlier stage of the appellate proceedings, in particular, before briefing was complete and oral argument set, and, in one instance, even before any briefing had been filed. See, e.g., Becker v. Keller Williams Realty, Inc., No. 19-cv-81451 (S.D. Fla. Aug. 27, 2020), Doc. No. 49, at 2 (finding court could not "prognosticate" when decision in Facebook would be issued; noting "the briefs in the Facebook case have not been filed and the Supreme Court has yet to set oral argument"). Further, as Mayvenn points out, a number of those cases were, at the time the stay was requested, "significantly more procedurally advanced" in the district court (see Reply 9:1-2); see, e.g., Becker, No. 19-cv-81451 (S.D. Fla. Aug. 27, 2020), Doc. No. 49, at 2 (noting, "[d]iscovery ha[d] been proceeding, expert disclosure [was] almost complete," and trial was set to commence in seven months), whereas "the early stage of this litigation weighs in favor of a stay," see Aleisa, 2020 WL 5993226, at *8 (granting stay pending decision in Facebook; noting case was "still in the pleadings stage" (internal quotation and citation omitted)).

Accordingly, to the extent Mayvenn seeks a stay pending a decision in Facebook, the Court finds the third factor weighs in favor of a stay, and, having found the other two factors likewise weigh in favor of a stay, will grant a stay pending the decision therein.

**2.    Stay Pending FCC's Declaratory Ruling**

Citing the primary jurisdiction doctrine, Mayvenn argues a stay, either in addition to or in the alternative to a stay pending a decision in Facebook, should be issued pending a declaratory ruling by the FCC as to the definition of an ATDS.

"The primary jurisdiction doctrine allows courts to stay proceedings . . . pending

United States District Court
Northern District of California

the resolution of an issue within the special competence of an administrative agency."
Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008).  The doctrine "applies
in a limited set of circumstances" and "is not designed to secure expert advice from
agencies every time a court is presented with an issue conceivably within the agency's
ambit."  See id. (internal quotations and citations omitted).  Rather, the doctrine "is
properly invoked when a claim is cognizable in federal court but requires resolution of an
issue of first impression, or of a particularly complicated issue that Congress has
committed to a regulatory agency."  Brown v. MCI WorldCom Network Servs., Inc., 277
F.3d 1166, 1172 (9th Cir. 2002).

Here, according to Mayvenn, the FCC, on October 3, 2018, released a Public
Notice seeking comment on the definition of an ATDS and the period for such comment
is now closed.  (See Mot. at 7:8-16.)  Given the Ninth Circuit's consistent resolution of
that question without awaiting administrative input, however, the Court finds it presents
neither "a matter of first impression" nor "a particularly complicated issue that merits
waiting for FCC guidance."  See Izor v. Abacus Data Sys., Inc., No. 19-CV-01057-HSG,
2019 WL 3555110, at *3 (N.D. Cal. Aug. 5, 2019) (internal quotation and citation omitted)
(finding stay pending FCC guidance on what constitutes ATDS not justified under primary
jurisdiction doctrine); see also Singer v. Las Vegas Athletic Clubs, 376 F. Supp. 3d 1062,
1069 (D. Nev. 2019) (denying stay sought under primary jurisdiction doctrine; noting
"Ninth Circuit courts have consistently rejected requests to stay actions pending further
FCC rulemaking").

Moreover, "courts must also consider whether invoking primary jurisdiction would
needlessly delay the resolution of claims," see Astiana v. Hain Celestial Grp., Inc., 783
F.3d 753, 760 (9th Cir. 2015) (holding "efficiency is the deciding factor in whether to
invoke primary jurisdiction"), and, unlike a stay pending the Supreme Court's decision in
Facebook, "a stay . . . pending an FCC decision could be indefinite," see Bacon v.
Artificial Grass Liquidators Location 1, Inc., No. 18-CV-01220-JLS-ADS, 2019 WL
8811867, at *5 (C.D. Cal. May 1, 2019), thereby needlessly delaying the resolution of

1    Trim's claims.

2        Accordingly, the Court declines to stay the instant action pending the FCC's

3    declaratory ruling.

4                                    **CONCLUSION**

5        For the reasons stated above, Mayvenn's "Motion to Dismiss Plaintiff's Amended

6    Complaint, or in the Alternative, to Stay This Action" is hereby GRANTED in part and

7    DENIED in part, as follows:

8        1.    To the extent Mayvenn seeks an order staying the above-titled action

9    pending a decision in Facebook, the Motion is hereby GRANTED, and the parties are

10   hereby DIRECTED to submit, no later than 14 days after such decision, a Status Report

11   setting forth their joint or respective positions as to the effect of said decision on the

12   instant action.

13       2.    In all other respects, the Motion is hereby DENIED.

14       In light of the foregoing, the Case Management Conference is hereby

15   CONTINUED from November 20, 2020, to July 16, 2021, at 10:30 a.m.  A Joint Case

16   Management Statement shall be filed no later than July 9, 2021.

17

18       **IT IS SO ORDERED.**

19

20   Dated: November 3, 2020

21                                              MAXINE M. CHESNEY
                                                United States District Judge

22

23

24

25

26

27

28