1    TIFFANY CHEUNG (CA SBN 211497)
     TCheung@mofo.com
2    MICHAEL BURSHTEYN (CA SBN 295320)
     MBurshteyn@mofo.com
3    MORRISON & FOERSTER LLP
     425 Market Street
4    San Francisco, California  94105-2482
     Telephone: 415.268.7000
5    Facsimile: 415.268.7522

6    Attorneys for Defendant
     MAYVENN, INC.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12   LUCINE TRIM, individually and on behalf of all      Case No.: 3:20-cv-03917-MMC
     others similarly situated
13                                                        **DEFENDANT'S NOTICE OF
                     Plaintiff,                           MOTION AND MOTION FOR
14                                                        SUMMARY JUDGMENT**
            v.
15                                                        Hearing Date:  April 8, 2022
     MAYVENN, INC.,                                       Time:   9:00 am
16                                                        Courtroom: 7, 19th Floor
                     Defendant.
17                                                        Judge Hon. Maxine M. Chesney

18                                                        **REDACTED**

19

20

21

22

23

24

25

26

27

28

sf-4600121

# TABLE OF CONTENTS

**Page**

NOTICE OF AND MOTION FOR SUMMARY JUDGMENT ................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

STATEMENT OF ISSUES TO BE DECIDED ................................................................... 2

INTRODUCTION ................................................................................................................. 2

FACTS & PROCEDURAL HISTORY ................................................................................. 3

    A.    This Case is One of Thirteen TCPA Class Action Cases Filed by Plaintiff in the Last Four Years .................................................................................... 3

    B.    Plaintiff Signed Up to a Mayvenn Sweepstakes to Win Mayvenn Products .......... 3

    C.    Plaintiff Permitted the Marketing Texts from Mayvenn Through Her Sweepstakes Signup ................................................................................... 5

    D.    Plaintiff Dismissed Her ATDS Claim, Leaving Only Her DNC List Claim Remaining ...................................................................................................... 6

    E.    A Forensic Inspection of Plaintiff's Devices Revealed that Plaintiff Failed to Preserve Relevant Records ................................................................... 6

LEGAL STANDARD ........................................................................................................... 7

    A.    The Court Should Grant Summary Judgment Where There Is No Dispute As To Any Material Fact ......................................................................... 7

    B.    There Is No Liability for a DNC List Claim if Defendant Had an Established Business Relationship with the Plaintiff ....................................... 8

ARGUMENT ......................................................................................................................... 8

II.    PLAINTIFF LACKS ARTICLE III STANDING TO BRING HER CLAIMS AGAINST MAYVENN ................................................................................................ 8

    A.    To Establish Article III Standing, Plaintiff Must Show That She Has Suffered Harm Within the Zone of Interests Protected by the TCPA ................... 8

    B.    Ms. Trim is a Serial Professional TCPA Plaintiff Who Falls Outside the TCPA's Zone of Interests ....................................................................... 9

III.    PLAINTIFF'S AFFIRMATIVE REGISTRATION FOR MAYVENN'S SWEEPSTAKES BARS HER TCPA CLAIM ......................................................... 11

    A.    Plaintiff's Affirmative Registration for Mayvenn's Sweepstakes Established a Business Relationship That Permitted Mayvenn's Texts ............... 11

            1.    Applications regarding a product or service establishes a business relationship that bars DNC List claims ....................................... 11

    B.    Plaintiff Registered for Mayvenn's Sweepstakes ............................................... 13

            1.    The Contemporaneous Evidence Demonstrates That Plaintiff Voluntarily Registered for Mayvenn's Sweepstakes ............................. 13

            2.    Plaintiff's Self-Serving and Unsupported Denial Cannot Create an Issue of Disputed Fact ........................................................ 14

            3.    Plaintiff's Failure to Preserve Relevant Evidence Further Supports Summary Judgment in Favor of Mayvenn ............................. 15

**TABLE OF CONTENTS**
**(continued)**

Page

        4.    Plaintiff's sweepstakes registration established a business relationship with Mayvenn under the TCPA ........................................... 17

IV.    PLAINTIFF'S CELLPHONE NUMBER IS A BUSINESS NUMBER THAT DOES NOT QUALIFY FOR PROTECTION UNDER THE DNC RULES .................. 17

    A.    To Prevail On a DNC List Claim, Plaintiff Must Show That the Number At Issue Was Not a Business Number ....................................................... 17

    B.    The Number at Issue is a Business Number Plaintiff Uses for Her Sales Job ...... 19

V.    CONCLUSION ............................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ..............................................................................................................7

*Apple Inc. v. Samsung Elecs. Co.*,
   888 F. Supp. 2d 976 (N.D. Cal. 2012) ...........................................................................15, 16

*Bacon v. Artificial Grass Liquidators Location 1, Inc.*,
   No. 818CV01220JLSADS, 2019 WL 8811867 (C.D. Cal. May 1, 2019) .................................9

*Bank v. Indep. Energy Grp. LLC*,
   No. 12-CV-1369, 2014 WL 4954618 (E.D.N.Y. Oct. 2, 2014) .............................................18

*Bank v. Indep. Energy Grp. LLC*,
   No. 12-CV-1369 JG VMS, 2015 WL 4488070 (E.D.N.Y. July 23, 2015) .......................18, 20

*Barsoum v. NYC Hous. Auth.*,
   202 F.R.D. 396 (S.D.N.Y. 2001) .........................................................................................15

*Blevins v. Premium Merch. Funding One, LLC*,
   No. 2:18-CV-377, 2018 WL 5303973 (S.D. Ohio Oct. 25, 2018) .........................................18

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ...........................................................................................................6, 7

*Chennette v. Porch.com, Inc.*,
   484 F. Supp. 3d 912 (D. Idaho 2020) ...................................................................................18

*City of Colton v. Am. Promotional Events, Inc.*,
   No. CV0906630PSGSSX, 2011 WL 13223880 (C.D. Cal. Nov. 22, 2011) ...........................15

*Engel v. Time Warner Cable*,
   847 F. App'x 405 (9th Cir. 2012) .........................................................................................14

*Fabricant v. Secure One Capital Corp.*,
   No. 2:20-cv-6857 (C.D. Cal. July 30, 2020) ..........................................................................9

*Facebook v. Duguid*,
   141 S. Ct. 1163 (2021) ...........................................................................................................6

*Forney v. Hair Club for Men Ltd., Inc.*,
   No. CV 16-9640-R, 2017 WL 4685549 (C.D. Cal. June 26, 2017) .......................................11

*Garcia v. Credit One Bank, N.A.*,
   No. 218CV191JCMEJY, 2020 WL 4431679 (D. Nev. July 31, 2020) ............................8, 9, 10

*Hamilton v. Spurling*,
   No. 3:11-cv-00102, 2013 WL 1164336 (S.D. Ohio Mar. 20, 2013)..........................................12

*Hansen v. United States*,
   7 F.3d 137 (9th Cir. 1993)................................................................................................7, 14

*Hirsch v. US Health Advisors, LLC*,
   337 F.R.D. 118 (N.D. Tex. 2020) ..........................................................................................12

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555(1992) .....................................................................................................................8

*Morris v. Modernize, Inc.*,
   No. 1:17-cv-00963-SS, 2018 WL 7076744 (W.D. Tex. Sept. 27 2018)................................17

*Moser v. F.C.C.*,
   811 F. Supp. 541 (D. Or. 1992).............................................................................................17

*Moser v. Health Ins. Innovations, Inc.*,
   No. 17CV1127-WQH(KSC), 2018 WL 6735710 (S.D. Cal. Dec. 21, 2018) .........................9

*Moskowitz v. Am. Sav. Bank, F.S.B.*,
   No. CV 17-00299 .....................................................................................................................14

*Nghiem v. Dick's Sporting Goods, Inc.*,
   318 F.R.D. 375 (C.D. Cal. 2016) ....................................................................................10, 11

*Quality Mgmt. and Consulting Servs., Inc. v. SAR Orland Food Inc.*,
   No. 11-C-06791, 2013 WL 5835915 (N.D. Ill. Oct. 30, 2013) ................................................12

*Reinsdorf v. Skechers U.S.A., Inc.*,
   296 F.R.D. 604 (C.D. Cal. 2013) ...........................................................................................16

*Residential Funding Corp. v. DeGeorge Fin. Corp.*,
   306 F.3d 99 (2d Cir. 2002)......................................................................................................16

*In re Rules and Reguls. Implementing the TCPA of 1991*,
   18 F.C.C. Rcd. 14014 (2003) ..............................................................8, 11, 12, 17, 18

*In the Matter of Rules and Reguls. Implementing the TCPA of 1991*,
   20 FCC Rcd. 3788 (2005) ........................................................................................................18

*Shelton v. Target Advance LLC*,
   No. CV 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) ...................................18, 20

*Smith v. Truman Rd. Dev., LLC*,
   No. 4:18-cv-00670-NKL, 2020 WL 2044730 (W.D. Mo. Apr. 28, 2020) ..............................12

*Southwell v. Mortg. Invs. Corp. of Ohio*,
   No. C13-1289 MJP, 2014 WL 4057166 (W.D. Wash. Aug. 14, 2014).................................20

*Stoops v. Wells Fargo Bank, N.A.*,
  197 F. Supp. 3d 782 (W.D. Pa. 2016) .......................................................................8

*Taylor v. List*,
  880 F. 2d 1040 (9th Cir. 1989)..................................................................................7

*The Valspar Corp. v. Millennium Inorganic Chemicals, Inc.*,
  No. 13-CV-3214(ADM/LIB), 2016 WL 6902459 (D. Minn. Jan. 20, 2016) ..........15

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 ..........................................................................................................8

*Trim v. Ethos Technologies Inc.*,
  No. 2:21-cv-09857 (C.D. Cal. Dec. 22, 2021) .....................................................9, 10

*Trim v. Gabri Isle LLC*,
  No. 2:21-cv-04975 (C.D. Cal. June 18, 2021) ..........................................................9

*Trim v. Network Capital Funding Corp.*,
  No. 8:20-cv-02251 (C.D. Cal. Nov. 30, 2020)...........................................................9

*Trim v. Simply Sweeps, LP et al.*,
  No. 2:20-cv-06637 (C.D. Cal. July 24, 2020) ...........................................................9

*United States v. Kitsap Physicians Serv.*,
  314 F.3d 995 (9th Cir. 2002)....................................................................................15

*Villiarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002)..................................................................................14

*Zelma v. Art Conway*,
  No. 2:12-CV-00256 DMC, 2013 WL 6498548 (D.N.J. Dec. 11, 2013)...................12

**Statutes**

47 U.S.C. § 227(c)(2)-(3) ................................................................................................8

**Other Authorities**

47 C.F.R. § 64.1200(c) ....................................................................................................8

47 C.F.R. § 64.1200(c)(2), (f)(5), (15) .........................................................................17

47 C.F.R. § 64.1200(c)(2), (f)(15)(ii)............................................................................11

47 C.F.R. § 64.1200(c), (c)(2)(ii), (f)(15)(ii) .................................................................8

Fed. R. Civ. P. 56(a)........................................................................................................6

sf-4600121

*National Do Not Call Registry FAQs*, FEDERAL TRADE COMMISSION CONSUMER
INFORMATION, https://www.consumer.ftc.gov/articles/national-do-not-call-
registry-faqs........................................................................................................................17

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:20-CV-03917-MMC

sf-4600121

1

<u>**NOTICE OF AND MOTION FOR SUMMARY JUDGMENT**</u>

2

TO THE COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:

3

PLEASE TAKE NOTICE that on April 8, 2022, at 9:00 a.m. or as soon thereafter as the

4

matter may be heard, before the Honorable Maxine M. Chesney in Courtroom 7, 19th Floor of the

5

San Francisco Courthouse, located at 450 Golden Gate Avenue, San Francisco, CA, 94102, or

6

through a virtual video-conferencing platform as the Court deems proper, Defendant Mayvenn,

7

Inc. ("Mayvenn") will and hereby does move for summary judgment on Plaintiff Lucine Trim's

8

remaining Do-Not-Call Registry List ("DNC List") claim under the Telephone Consumer

9

Protection Act ("TCPA"), 47 U.S.C. Section 227 *et seq.*

10

This Motion is made pursuant to Federal Rule of Civil Procedure 56 on the grounds that

11

Plaintiff: (1) lacks standing to assert her DNC List claim; (2) established a business relationship

12

with Mayvenn when she signed up for Mayvenn's sweepstakes; and (3) used her cellphone as a

13

business phone, which falls outside the purview of her DNC List claim.

14

This motion is based on this Notice of Motion and Motion, the accompanying

15

Memorandum of Points and Authorities, the supporting declarations of Michael Burshteyn,

16

Robert Choi, and Gregory Cancilla, the exhibits filed herewith, the pleadings and papers on file

17

herein, and such other matters as may be presented to the Court at the time of the hearing.

18

19

Dated:        January 19, 2022

20

TIFFANY CHEUNG
MICHAEL BURSHTEYN
MORRISON & FOERSTER LLP

21

22

By:   /s/ Tiffany Cheung

23

TIFFANY CHEUNG

24

Attorneys for Defendant
MAYVENN, INC.

25

26

27

28

sf-4600121

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF ISSUES TO BE DECIDED**

1.     Does Plaintiff lack standing to bring a claim for violations of the regulations related to the DNC List, where Plaintiff's interests fall outside the TCPA's zone of interests?

2.     Does Plaintiff's registration for Mayvenn's sweepstakes create an established business relationship that defeats her DNC List claim?

3.     Does Plaintiff's use of her cellphone as a business number preclude Plaintiff's DNC List claim as a matter of law?

**INTRODUCTION**

Plaintiff Lucine Trim brings this putative class action based on the receipt of two text messages from Mayvenn, an innovative hair products and services company.  This class action case is one of thirteen TCPA class actions Plaintiff has filed against a myriad of companies.  Because Plaintiff is a serial professional TCPA plaintiff that falls outside the "zone of interests" protected by the TCPA, she lacks Article III standing to pursue her sole DNC List claim.

Indeed, Plaintiff permitted these two text messages when she affirmatively registered for a Mayvenn sweepstakes with an opportunity to win Mayvenn products and services.  Plaintiff's sweepstakes entry created an established business relationship with Mayvenn based on her affirmative application to the company related to its products.  In response, Plaintiff simply denies ever entering into the sweepstakes, but extensive evidence in the record contradicts her testimony.  Ninth Circuit authority is clear that Plaintiff's self-serving testimony cannot create a material issue of fact that defeats summary judgment.

Further, Plaintiff's sole DNC List claim fails because the regulations govern only solicitation calls made to residential lines—not business phone numbers.  Plaintiff used the phone number at issue as her business number and explicitly promoted it as a business number in her sales job.  Because calls to business numbers are not covered by the applicable regulations, Plaintiff's claim fails for this separate and independent reason.

Accordingly, Mayvenn respectfully requests that the Court enter summary judgment in its favor.

sf-4600121

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FACTS & PROCEDURAL HISTORY

### A. This Case is One of Thirteen TCPA Class Action Cases Filed by Plaintiff in the Last Four Years

Plaintiff is a serial TCPA litigant.  Plaintiff Trim filed seven TCPA cases as a putative class representative before the present action against Mayvenn, and has filed five TCPA cases since. (Declaration of Michael Burshteyn in Support of Mayvenn's Motion for Summary Judgment ("Burshteyn Declaration") ¶ 7, Ex. G.)  These cases follow a pattern.  In each, Plaintiff alleges receiving a number of texts or calls from companies with which she claims to have had no relationship or interaction. (*Id.*)  When asked about the prior TCPA cases she filed, Plaintiff could not recall or did not know if she was a class representative, whether any class had been certified, whether the case was still pending, or any details regarding her own allegations in these cases. (October 19, 2021 Deposition of Plaintiff Lucine Trim ("Trim Deposition") 151:8-180:12.)

Plaintiff's inability to provide any information about the numerous cases in which she was a proposed class representative suggests she is not a typical consumer TCPA plaintiff and not engaged with representing the putative class. (*See id.*)

### B. Plaintiff Signed Up to a Mayvenn Sweepstakes to Win Mayvenn Products

On February 10, 2020, Plaintiff registered for a sweepstakes offered via Mayvenn's Instagram account. (Declaration of Robert Choi ("Choi Declaration") ¶ 6, Ex. D.)  Contestants in this sweepstakes were eligible to win various prizes, including a Mayvenn Hair product of the winner's choice, a complementary install and style of the Mayvenn Hair, and a makeover for two. (*Id.* ¶ 2, Ex. A.)

Mayvenn's records show that Plaintiff submitted information on Mayvenn's online web form to register for the sweepstakes.  Plaintiff admitted that all of the information submitted on the registration form reflected her own accurate information—her name: Lucine Trim; email address: ███████████; and phone number: 1 (818) 471-2347.  (Trim Dep. 141:7-142:16, 146:19-147:4.)  Further, Mayvenn's software collected the IP address associated with

Plaintiff's registration.  (Choi Decl. ¶ 6, Ex. D.)  The IP address reflects an identifier provisioned by a particular user's network when completing the registration.  (Declaration of Gregory Cancilla ("Cancilla Declaration") ¶ 4, Ex. B ¶¶ 5.0.5 – 5.0.9)  The IP address for Plaintiff's registration connected to a location in North Hollywood, CA, where Plaintiff admits she was living at the time of the registration.  (Trim Dep. 146:9-18.)  Mayvenn's records also collected the source of Plaintiff's sweepstakes registration—via Instagram.  (Choi Decl. ¶ 7, Ex. D.)  Plaintiff likewise admits that she regularly used Instagram at the time of the registration in February 2020.  (Trim Dep. 34:11-21; *see also* Burshteyn Decl. ¶ 5, Ex. E at p. 23 )

Regarding Plaintiff's IP address, expert analysis indicates that it belonged to an AT&T account.  (Cancilla Decl. ¶ 4, Ex. B ¶ 5.0.6.)  At the time of her registration for the Mayvenn sweepstakes, Plaintiff resided in North Hollywood at her mother's residence.  (Burshteyn Decl. ¶ 3, Ex. B at p. 3.)  Consistent with the IP address of the internet network that was identified in Mayvenn's records for Plaintiff's registration, Plaintiff's mother subscribed to AT&T for internet service in February 2020.  (*Id.* ¶ 3, Ex. C, ¶ 9, Ex. I.)

During her deposition, Plaintiff denied registering for the Mayvenn sweepstakes and further claimed that she had no interest in hair products or services and never posted on social media about hair products.  (Trim Dep. 186:6-13.)  Plaintiff's Instagram posts, however, include at least ten different photographs of hair styles, including in 2019 and January 2020, shortly before Plaintiff's registration to Mayvenn's sweepstakes.[1]  (Burshteyn Decl. ¶ 5, Ex. E.)  Plaintiff also denied ever posting about any products offered by Grace Black Hair, but her Instagram posts included several photos with captions referencing "@graceblackhair," including one posted less than a month before her Mayvenn sweepstakes registration, on January 19, 2020.  (*Compare* Trim Dep. 184:7-185:9 *with* Burshteyn Decl. ¶ 5, Ex. E at pp. 2-13, 20-21.)

The phone number Plaintiff submitted to Mayvenn is the same phone number appearing in Plaintiff's other TCPA complaints.  (Burshteyn Decl. ¶ 7, Ex. G.)  Plaintiff uses this phone

---

[1] Plaintiff testified that her Instagram handle is "Coconutqueen123456."  (Trim Dep. 33:18-21.)

sf-4600121

number as a business phone for her sales job.  Plaintiff testified that she has been a sales representative for Impact Merchant Solutions (also known as Residual Income Opportunities) since 2018.  (Trim Dep. 26:17-27:4.)[2]  Her work in this role involves making sales calls and talking to prospective customers.  (*Id.* 63:3-11, 77:11-23.)  In a publicly posted video, Plaintiff promotes her cell phone number as her business number for this job.   (Burshteyn Decl. ¶ 6, Ex. F.)

### C.  Plaintiff Permitted the Marketing Texts from Mayvenn Through Her Sweepstakes Signup

The sweepstakes registration form submitted by Plaintiff included Mayvenn's sweepstakes rules, which incorporated its Privacy Policy.  (Choi Decl. ¶ 4, Ex. B.)  The operative Privacy Policy on February 10, 2020 stated that Plaintiff's personal information may be used to "send [] marketing communications that Mayvenn believe[s] may be of interest to [the individual]" and to "allow [the individual] to participate in sweepstakes, contests and similar promotions and to administer these activities."  (*Id.* ¶ 5, Ex. C at p. 2.)

After the close of the registration period, Mayvenn notified Plaintiff on February 14, 2020 via text message that it had contacted the winner for the sweepstakes and invited Plaintiff to stay tuned for the next giveaway.  (*Id.* ¶ 7, Ex. E.)  Mayvenn's message indicated that Plaintiff could also reply "STOP" to opt out of receiving additional text messages.  (*Id.*)  Plaintiff, however, did not reply "STOP" to this message.  Although Plaintiff claims that the first text from Mayvenn was unwelcomed, she did not reply "STOP" until she received three additional texts.  (*Id.*)  As soon as Plaintiff indicated she no longer wished to receive these texts, Mayvenn sent no further text messages.  Plaintiff has not asserted any claims based on the first two texts she received on February 14, 2020 and March 2, 2020.  Her complaint asserts claims only for the latter two

---

[2] Plaintiff identified her employer as "Residual Income Opportunities" in her deposition, but she testified that the email domain for her work email address is "@impactmerchantsolutions.com," and she was introduced as an Impact Merchant Solutions representative while appearing as a guest on a Facebook talk show.  (Trim Dep. 31:15-16; Burshteyn Decl. ¶ 6, Ex. F.)  In this brief, Mayvenn will refer to Plaintiff's employer as "Impact Merchant Solutions" for ease of reference.

sf-4600121

messages she received on April 24, 2020 and May 4, 2020, which directly relate to the products offered in the sweepstakes.  (ECF No. 21, Amended Complaint ¶ 42.)  (*See* Choi Decl. ¶ 7, Ex. E.)

### D.  Plaintiff Dismissed Her ATDS Claim, Leaving Only Her DNC List Claim Remaining

Four months after signing up for Mayvenn's sweepstakes, Plaintiff filed this lawsuit on June 15, 2020.  (ECF No. 1, Complaint.)  Her Complaint initially included a TCPA claim based on the TCPA's provisions governing calls made using an Automatic Telephone Dialing System ("ATDS"), but Plaintiff voluntarily dismissed her ATDS claim following the Supreme Court's ruling in *Facebook v. Duguid,* 141 S. Ct. 1163 (2021).  (ECF No. 49, Stipulation of Voluntary Dismissal.)  Plaintiff's sole remaining DNC List claim is based on her assertion that she received solicitation texts to a phone number listed on the national Do-Not-Call registry.  (ECF No. 21, Amended Complaint.)

### E.  A Forensic Inspection of Plaintiff's Devices Revealed that Plaintiff Failed to Preserve Relevant Records

A forensic expert inspected Plaintiff's devices for evidence that would resolve the parties' dispute regarding whether Plaintiff had registered for Mayvenn's sweepstakes in February 2020.  The expert's inspection, however, revealed that Plaintiff failed to preserve relevant records during the relevant time period.  (Cancilla Decl. ¶ 4, Ex. B ¶ 1.1.1.)  As she had previously filed numerous TCPA cases, Plaintiff was on notice of her preservation obligations in connection with litigation she anticipated or initiated.  Plaintiffs' devices, however, had a gap in her browser history and history of Instagram interactions during the relevant time period around February 2020—though her devices did contain archived information from before and after the key time period in this case.  (*Id.* ¶¶ 1.1.2-1.1.4.)  In addition, the forensic expert was unable to obtain a forensic image of the iPhone 11 Plaintiff used during the relevant time because at some point after Plaintiff's deposition in this case on October 19, 2021, Plaintiff disposed of the relevant device (*Id.* ¶ 5.0.1; Trim Dep. 128:15-18.)

1

2

3

# LEGAL STANDARD

### A. The Court Should Grant Summary Judgment Where There Is No Dispute As To Any Material Fact

4

5

6

7

8

9

10

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A court should enter summary judgment for the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact[.]" *Id*.  Substantive law determines what facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

11

12

13

14

15

A party moving for summary judgment bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. *Taylor v. List*, 880 F. 2d 1040, 1044-45 (9th Cir. 1989).  "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.

16

17

18

19

After the moving party meets this burden, the burden then shifts to the opposing party. To defeat summary judgment, the opposing party must establish the existence of a genuine issue of material fact as to an essential element of her claim.  *Id.* at 322.  The standard requires that more than a "scintilla of evidence" support her position.  *Anderson*, 477 U.S. at 252.

20

21

22

23

24

25

26

27

A plaintiff cannot avoid summary judgment "by relying solely on conclusory allegations [that are] unsupported by factual data."  *Taylor*, 880 F.2d at 1045; *see also Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993).  Examples of such unsupported conclusory allegations include "[w]hen the nonmoving party relies only on its own affidavits to oppose summary judgment[.]"  *Id.*  The plaintiff "cannot rely" on such self-serving testimony "to create an issue of material fact."  *Id.*  Even if the plaintiff's evidence is "merely colorable," but "not significantly probative, summary judgment may be granted" in favor of the defendant.  *Anderson*, 477 U.S. at 249-50.

28

sf-4600121

**B.  There Is No Liability for a DNC List Claim if Defendant Had an Established Business Relationship with Plaintiff**

Plaintiff's sole remaining claim is based on alleged violations of the TCPA's DNC List regulations.  The TCPA grants authority to the Federal Communications Commission ("FCC") to promulgate regulations to establish and operate a national database to compile the numbers of residential (as opposed to business) telephone subscribers who object to receiving telephone solicitations.  47 U.S.C. § 227(c)(2)-(3).  Pursuant to this authority, the FCC promulgated regulations governing the initiation of "any telephone solicitation" to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry[.]" 47 C.F.R. § 64.1200(c).  Where a person has an "established business relationship" ("EBR") with the caller, including through an affirmative communication related to a company's products, this EBR defeats a DNC List claim.  *See* 47 C.F.R. § 64.1200(c), (c)(2)(ii), (f)(15)(ii).

## ARGUMENT

## II.  PLAINTIFF LACKS ARTICLE III STANDING TO BRING HER CLAIMS AGAINST MAYVENN

### A.  To Establish Article III Standing, Plaintiff Must Show That She Has Suffered Harm Within the Zone of Interests Protected by the TCPA

Article III standing requires that Plaintiff show she suffered an injury-in-fact that is "concrete and particularized" and "actual or imminent" and not merely conjectural or hypothetical, a causal connection between the injury and the conduct complained of, and that it is "likely" that a favorable decision will provide redress for the injury.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203(2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555(1992)).

District courts in the Ninth Circuit have held in TCPA cases that to establish Article III standing, the plaintiff must "suffer[] from the harm that Congress intended the TCPA to address." *Garcia v. Credit One Bank, N.A.*, No. 218CV191JCMEJY, 2020 WL 4431679, at *3 (D. Nev. July 31, 2020) (granting summary judgment where serial TCPA litigant collected calls in order to file claims).  In the context of the DNC List, Congress intended to address the potential harm to "the privacy interests of those consumers that do not wish to receive telephone solicitations."  *In re Rules and Reguls. Implementing the TCPA of 1991*, 18 F.C.C. Rcd. 14014, 14033-34, 14039-

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:20-CV-03917-MMC

sf-4600121

40 (2003) ("2003 FCC Order").  Where the plaintiff "file[s] TCPA actions as part of a scheme to

generate revenue[,]" there is no privacy harm of the sort contemplated because the call is not

unwelcome.  *Garcia*, 2020 WL 4431679, at *3.  Such plaintiffs have not suffered injury-in-fact

and thus "lack[] constitutional standing to assert a claim[.]"  *Id.* (citing *Stoops v. Wells Fargo*

*Bank, N.A.*, 197 F. Supp. 3d 782, 803 (W.D. Pa. 2016)).  Professional TCPA plaintiffs, like Ms.

Trim, fall outside of the "zone of interest" of the TCPA "necessary to establish prudential

jurisdiction[,]" because any injury they might assert is "so marginally related to or inconsistent with

the purposes implicit in the TCPA that it cannot reasonably be assumed that Congress intended to

permit the suit." *Id.*[3]

**B.    Ms. Trim is a Serial TCPA Plaintiff Who Falls Outside the TCPA's Zone of Interests**

Here, Plaintiff is a serial TCPA litigant who falls outside the statute's zone of interests.

Over the past four years, she has filed 13 TCPA class actions.  These 13 complaints are in many

respects word-for-word identical, and she is represented in all by the same attorney and

overlapping groups of co-counsel.  (Burshteyn Decl. ¶ 7, Ex. G; Trim Dep. 180:16-22.)  Since

filing this action, Plaintiff has filed an additional 5 putative class actions asserting TCPA

violations.  (*Id.* ¶ 7, Ex. G at pp. 83, 59, 2, 17, 126 (*Trim v. Simply Sweeps, LP et al.*, No. 2:20-cv-

06637 (C.D. Cal. July 24, 2020); *Fabricant v. Secure One Capital Corp.*, No. 2:20-cv-6857 (C.D.

Cal. July 30, 2020); *Trim v. Network Capital Funding Corp.*, No. 8:20-cv-02251 (C.D. Cal. Nov.

30, 2020); *Trim v. Gabri Isle LLC*, No. 2:21-cv-04975 (C.D. Cal. June 18, 2021); *Trim v. Ethos*

*Technologies Inc.*, No. 2:21-cv-09857 (C.D. Cal. Dec. 22, 2021).)

At Plaintiff's deposition, Plaintiff lacked familiarity with these cases, did not track them

---

[3] Other courts have also acknowledged that professional plaintiffs lack standing.  *See*, *e.g.*, *Bacon v. Artificial Grass Liquidators Location 1, Inc.*, No. 818CV01220JLSADS, 2019 WL 8811867, at *2 (C.D. Cal. May 1, 2019) (observing that at the summary judgment stage, establishing that a plaintiff "uses the TCPA as a business," which can be supported by deposition testimony, would preclude their standing to sue); *Moser v. Health Ins. Innovations, Inc.*, No. 17CV1127-WQH(KSC), 2018 WL 6735710, at *12 (S.D. Cal. Dec. 21, 2018) (allowing discovery into question of professional TCPA litigation activity, because such discovery would be relevant to whether the plaintiff "waited for the phones to ring and sometimes answered the calls and told the callers to stop but she hoped the calls would continue").

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:20-cv-03917-MMC

sf-4600121

closely, and did not have a clear recollection of any of the underlying allegations in these cases. (Trim Dep. 151:8-180:12.)  For a majority of her lawsuits, she did not recall the status of whether a case was pending or settled.[4]  Although each of the complaints identified Plaintiff as a proposed class representative, she did not recall whether a class had been certified in any of these cases, and in several instances, she was unaware whether she was a proposed class representative and did not know who her attorneys were.  (Trim Dep. 180:2-8, 152:20-153:5, 172:20-22.)[5]  Out of Plaintiff's twelve other filed TCPA cases, she has voluntarily dismissed ten of them without significant litigation activity.[6]  All but one were resolved and dismissed within ten months of filing, six within six months of filing.   Plaintiff's apparent lack of engagement in any of the prior seven class actions[7] she has filed and her pattern of resolving cases (presumably through monetary settlements) shortly after they are filed suggest that she views the TCPA as a means to "generate revenue," rather than to vindicate the interests of any class she purports to represent.

Her conduct with respect to Mayvenn further confirms Plaintiff's lack of standing.  After signing up to Mayvenn's sweepstakes and receiving a text message on February 14, 2020, Plaintiff did not complain to Mayvenn or respond with a  "STOP" message.  Despite the numerous TCPA cases she had previously filed and the clear direction of the first message to text "STOP" if she did not want the messages, she waited for the messages to continue, and did not respond "STOP" until months later in May 2020.  The fact that Plaintiff, "[i]nstead of taking the steps necessary to stop the alleged injury," "took steps to allow the continuance of the injury while building a record to facilitate a later claim," supports a finding that she is a professional

---

[4] *See* Trim Dep. 151:8-13, 153:13-14, 155:5-6, 156:25-7, 159:3-13, 161:13-162:9, 169:12-18, 171:19-172:6, 176:20-177:3.

[5] When asked if she had heard of the TCPA statute, Plaintiff responded "No." (Trim Dep. 147:5-7.)

[6] For one of the two cases still pending, *Trim v. Ethos Technologies Inc.*, No. 2:21-cv-09857 (C.D. Cal.), Plaintiff filed this complaint on December 22, 2021—just under a month ago.

[7] In one case, filed against Gabri Isle LLC in the Central District of California, Plaintiff dismissed the case after the judge issued an order to show cause regarding dismissal for lack of prosecution, less than 4 months after filing.  No. 2:21-cv-04975 (ECF No. 9.)

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:20-CV-03917-MMC

1    TCPA plaintiff.  *Garcia*, *supra*, 2020 WL 4431679, at *3 (granting summary judgment in favor

2    of defendant against professional TCPA plaintiff).[8]

3         Because Plaintiff falls outside the "zone of interests" protected by the TCPA, she has not

4    established Article III standing, and the Court should grant summary judgment in favor of

5    Mayvenn.

6    **III.    PLAINTIFF'S AFFIRMATIVE REGISTRATION FOR MAYVENN'S
           SWEEPSTAKES BARS HER TCPA CLAIM**

7
         **A.    Plaintiff's Affirmative Registration for Mayvenn's Sweepstakes Established a
8              Business Relationship That Permitted Mayvenn's Texts**

9              **1.    Applications regarding a company's product or service establishes a
                    business relationship that bars DNC List claims**
10

11        If the residential subscriber has an "established business relationship" with the caller, the

12   TCPA permits solicitation messages to numbers identified on the DNC List.  47 C.F.R. §

13   64.1200(c)(2), (f)(15)(ii) (excluding "any person with whom the caller has an established

14   business relationship" from the definition of "telephone solicitation").  The 2003 FCC Order

15   allows telemarketers to "continue to contact consumers on the national [DNC] list with whom

16   they have an established business relationship." 2003 FCC Order, at 14039.  This includes even

17   "solicitations" to a consumer "despite her registering for the Do-Not-Call list." *Forney v. Hair

18   Club for Men Ltd., Inc.*, No. CV 16-9640-R, 2017 WL 4685549, at *3 (C.D. Cal. June 26, 2017).

19        An established business relationship arises from a "voluntary two-way communication

20   between a person or entity and a residential subscriber" based on "the subscriber's purchase or

21   transaction with the entity" or "the subscriber's inquiry or application regarding products or

22   services offered by the entity within the three months immediately preceding the date" of the

23

24        [8] Plaintiff's professional TCPA activities likewise call into question her adequacy as a
     class representative.  A professional plaintiff's claims are not "typical of the class" because the
25   typical class member would have no experience litigating claims under the statute. *Nghiem v.
     Dick's Sporting Goods, Inc.*, 318 F.R.D. 375, 382 (C.D. Cal. 2016) (denying class certification
26   where proposed representative was a professional TCPA plaintiff).  In *Nghiem*, the court found
     that class members would be disadvantaged because plaintiff would be "preoccupied with
27   defenses unique" to her, including defending against claims that she "fabricated" the lawsuit and
     has been "hunting for a text messaging lawsuit[.]" *Id.*
28

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:20-cv-03917-MMC

sf-4600121

1   subscriber's call. 47 C.F.R. § 64 1200(f)(5).  Following an affirmative communication from a

2   consumer about a product, "a consumer might reasonably expect a prompt follow-up telephone

3   call[.]"  2003 FCC Order, at 14081.  An established business relationship can take many forms.

4   As the FCC has articulated, the definition "should [not] be narrowed to only include situations

5   where a purchase or transaction is completed."  2003 FCC Order, at 14080.  Moreover, the

6   formation of an established business relationship "should not be limited by product or service."

7   *Id.* at 14082.

8        Courts analyzing similar situations have found that an established business relationship

9   forms where a subscriber provides her contact information to enter contests such as a raffle.  *See*,

10  *e.g.*, *Smith v. Truman Rd. Dev., LLC*, No. 4:18-cv-00670-NKL, 2020 WL 2044730, *10 (W.D.

11  Mo. Apr. 28, 2020); *see also Quality Mgmt. and Consulting Servs., Inc. v. SAR Orland Food Inc.*,

12  No. 11-C-06791, 2013 WL 5835915 (N.D. Ill. Oct. 30, 2013) (denying class certification because

13  the defendant had a viable established business relationship defense that required an

14  individualized inquiry as to each putative class member).  In *Smith*, the court concluded that the

15  plaintiff established a business relationship with a pub, after he attended a happy hour and

16  provided his "name, phone number, and birthdate" on a "sign-in sheet in order to check-in to the

17  happy hour, receive discounts on drinks, and enter a raffle for a free happy hour."  2020 WL

18  2044730, at *1-2.  Because subsequent promotional text messages regarding similar prizes were

19  sent to the plaintiff following his "sign-in" and raffle submission, the court held that there was no

20  viable TCPA claim.[9]  *Id.*  Here, because Mayvenn sent text messages to Plaintiff within three

21  months of her sweepstakes entry, Mayvenn's established business relationship with Plaintiff

22  precludes her TCPA claim.

23  

24       [9] Other cases have held that inquiries into products or services, even those that do not arise
     to the level of a sweepstakes entry, create an established business relationship.  *Hamilton v.
25   Spurling*, No. 3:11-cv-00102, 2013 WL 1164336, at *10 (S.D. Ohio Mar. 20, 2013) (established
     business relationship existed where caller inquired about chiropractor services); *Hirsch v. US
26   Health Advisors, LLC*, 337 F.R.D. 118, 130 (N.D. Tex. 2020) (established business relationship
     formed where plaintiff inquired about health-related services); *Zelma v. Art Conway*, No. 2:12-
27   CV-00256 DMC, 2013 WL 6498548, at *2 (D.N.J. Dec. 11, 2013) (receiving a free subscription
     through the plaintiff's enrollment in an airline's frequent flyer program created an established
28   business relationship with the magazine company that defeated DNC List claim).

12

**B.    Plaintiff Registered for Mayvenn's Sweepstakes**

   **1.    The Contemporaneous Evidence Demonstrates That Plaintiff Voluntarily Registered for Mayvenn's Sweepstakes**

Based on contemporaneous logs maintained by Mayvenn, on February 10, 2020, Ms. Trim completed a web form through which she provided her accurate contact information, including her cellphone number and email address, to Mayvenn for a chance to win Mayvenn products and services.  (Choi Decl. ¶ 6, Ex. D.)  Plaintiff admitted that these contemporaneous records of Plaintiff's registration contain her accurate first and last name, email address, and phone number. (Trim Dep. 141:7-142:16, 146:19-147:4.)

An overwhelming amount of supporting evidence shows that Plaintiff signed up to Mayvenn's sweepstakes in February 2020, consistent with Mayvenn's records:

- The geolocation recorded by the sign-up software identified North Hollywood, California as the registrant's location.  (Choi Decl. ¶ 6, Ex. D.)  Plaintiff admits that she was residing in North Hollywood, at her mother's apartment, in February 2020 (Trim Dep. 22:25-23:8, 146:9-18);

- A forensic expert associated the IP address recorded by Mayvenn's sign-up software with an AT&T internet service.  (Cancilla Decl. ¶ 4, Ex. B ¶ 5.0.6.)  In February 2020, Plaintiff's mother subscribed to AT&T for internet services provided to her residence in North Hollywood.  (Burshteyn Decl. ¶ 3, Ex. B at p. 3.)  These documents are consistent with Plaintiff's use of an AT&T WiFi network through her device;[10]

- Plaintiff's testimony and Instagram posts show that she used Instagram around the time of her sign up to Mayvenn's sweepstakes, consistent with the sweepstakes

---

[10] Mayvenn issued a third-party subpoena to AT&T in order to verify the IP address of the network Plaintiff used to register to Mayvenn's sweepstakes.  (Burshteyn Decl. ¶ 8, Ex. H.) AT&T, however, responded that it does not have records dating back to February 2020 because it has a one-year retention policy for records related to certain IP addresses and confirmed that IP addresses can be dynamic and routinely change.  (Burshteyn Decl. ¶ 9.)  Although Plaintiff could have preserved relevant records regarding the IP addresses of networks used on her devices in February 2020, Plaintiff has not produced such information.  (Cancilla Decl. 4, Ex. B ¶ 6.0.4.)

1   records showing that she signed up using an Instagram link (Burshteyn Decl.¶ 5

2   Ex. E at pp. 17, 23; Trim Dep. 24:18-21); and

3   • Plaintiff received 4 text messages following her sweepstakes signup, yet did not

4   respond with any request to "STOP" until months later, only after she had received

5   additional messages (Choi Decl. ¶ 7, Ex. E).

6   **2.    Plaintiff's Self-Serving and Unsupported Denial Cannot Create an Issue of Disputed Fact**

7

8   Despite the contemporaneous extrinsic records and supporting evidence, Plaintiff claims

9   she did not sign up for Mayvenn's sweepstakes.  Conclusory, self-serving testimony, however,

10   cannot create a material fact dispute.  Under controlling Ninth Circuit authority, a plaintiff

11   "cannot rely on conclusory allegations unsupported by factual data to create an issue of material

12   fact." *See Hansen*, 7 F.3d at 138.  In such cases, courts have granted summary judgment despite

13   the self-serving uncorroborated testimony.  *Engel v. Time Warner Cable*, 847 F. App'x 405, 407

14   (9th Cir. 2012) (affirming grant of defendant's summary judgment motion because self-serving

15   testimony was insufficient) (citing *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th

16   Cir. 2002)).

17   Likewise, uncorroborated testimony from a plaintiff in a TCPA case cannot defeat

18   summary judgment.  *See, e.g., Moskowitz v. Am. Sav. Bank, F.S.B.*, No. CV 17-00299 HG-RT,

19   2020 WL 61576 (D. Haw. Jan. 6, 2020).  In *Moskowitz*, the plaintiff—like Ms. Trim here—

20   claimed that he never contacted the defendant, despite records showing "texts from his cell phone

21   [that] were sent to American Savings Bank's Short Code." *Id.* at *4.  Similar to the situation

22   here, the plaintiff in *Moskowitz* "[did] not have complete records of the text messages sent to and

23   received from his phone" but did not dispute that he "was in possession of his cellular phone

24   during the relevant time period." *Id.* at *4-5.  The court determined that "[t]he Parties' dispute as

25   to who actually sent the text messages [was] *not material* to the Court's analysis" and that "[t]he

26   fact that Plaintiff does not recall initiating the text message *does not alter* the Court's analysis."

27   *Id.* at *5, 10 (emphasis added).

28   Here, Plaintiff's testimony is not only uncorroborated, it is contradicted by significant

14

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:20-cv-03917-MMC

1  evidence in the record.  Notwithstanding the evidence, Plaintiff appears to speculate that some

2  unknown third party registered for Mayvenn's sweepstakes using Plaintiff's accurate contact

3  information.  This alternative explanation is implausible because a third party would have no

4  incentive to input Plaintiff's accurate information into a sweepstakes entry.  If Plaintiff's entry

5  had won, Plaintiff would have received the prizes—not the unknown third party.  Indeed, the

6  forensic expert's investigation did not find any sign of unauthorized access or compromise to

7  Plaintiff's devices.  (Cancilla Decl. ¶ 4, Ex. B ¶ 1.1.5.)  Based on the absence of any evidence to

8  corroborate Plaintiff's theory, the Court should reject Plaintiff's attempt to create a material fact

9  dispute with self-serving, unsupported testimony.

10          **3.      Plaintiff's Failure to Preserve Relevant Evidence Further Supports
                       Summary Judgment in Favor of Mayvenn**

11

12          Beyond the contemporaneous records maintained by Mayvenn, the Court should not credit

13  Plaintiff's claim that she did not register for the Mayvenn sweepstakes because Plaintiff failed to

14  preserve relevant evidence.  In the Ninth Circuit, a "plaintiff's duty" to preserve evidence is

15  "often triggered before litigation commences."  *City of Colton v. Am. Promotional Events, Inc.*,

16  No. CV0906630PSGSSX, 2011 WL 13223880, at *4 n. 2 (C.D. Cal. Nov. 22, 2011); *United

17  States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002) (duty attaches before

18  litigation).  This can occur a "substantial period before litigation is actually commenced," when

19  the plaintiff "becomes aware of facts from which it is reasonably foreseeable that the plaintiff will

20  commence litigation."  *The Valspar Corp. v. Millennium Inorganic Chemicals, Inc.,* No. 13-CV-

21  3214(ADM/LIB), 2016 WL 6902459, at *5 (D. Minn. Jan. 20, 2016).  When the plaintiff has

22  assistance of counsel, this further supports a pre-litigation preservation duty.  *Barsoum v. NYC

23  Hous. Auth.,* 202 F.R.D. 396, 400 (S.D.N.Y. 2001).  For example, in *Barsoum*, the court found

24  that the plaintiff's duty to preserve evidence was triggered 16 months before litigation

25  commenced because plaintiff had assistance of counsel and should have foreseen that the records

26  would be relevant to future litigation.  202 F.R.D. at 400.

27          Plaintiff's failure to preserve relevant evidence here further justifies disregarding her self-

28  serving testimony.  *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 990, 993 (N.D. Cal.

2012) (noting that a preservation duty existed months prior to commencement of litigation and failure to stop records destruction, even if routine, "raises a presumption" that the unpreserved "evidence goes to the merits of the case, and further, that such evidence was adverse to the party" that failed to preserve) (citing cases).[11]  In light of Ms. Trim's numerous prior TCPA actions, she was on notice of her duty to preserve relevant information of her interactions with Mayvenn and her device records around the time of her receipt of Mayvenn's text messages from February 14, 2020 to May 4, 2020.  Although Plaintiff testified that she was in contact with her counsel about these Mayvenn text messages during this time, indicating that she anticipated potential litigation, she did not preserve all relevant information on her devices.  (*See* Trim Dep. 64:21-65:5.)

The forensic expert's investigation revealed the following significant preservation gaps:

- The earliest internet browser record information only goes back to November 10, 2021, well after the date of Plaintiff's interactions with Mayvenn (Cancilla Decl. ¶ 4, Ex. B ¶ 5.0.13);

- Plaintiff's devices do not contain records of IP address history in or around February 2020 (*id.* ¶¶ 1.1.3, 6.0.1);

- Plaintiffs' devices do not include complete records of Plaintiffs' access to Instagram in or around February 2020 (*id.* ¶¶ 1.1.3, 1.1.4); and

- Plaintiff device backups contain snapshots between December 31, 2013 and January 16, 2019, and backups created on November 15, 2021 as well as November 18, 2021, but Plaintiff did not create any backups to preserve data from February 2020 to May 2020.  (*Id.* ¶¶ 1.1.2, 4.0.4.)

Failing to preserve relevant records is another reason that the Court should disregard Plaintiff's self-serving testimony and find that Plaintiff has failed to raise a material issue of fact sufficient to defeat summary judgment.

---

[11] Defendant reserves all rights to seek sanctions based on spoliation of relevant evidence, if necessary.  *See Apple*, 888 F. Supp. 2d at 989; *see also Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013) (citing the Ninth Circuit's adoption of *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)).

sf-4600121

**4.** **Plaintiff's sweepstakes registration established a business relationship with Mayvenn under the TCPA**

Here, Plaintiff established a business relationship when she entered Mayvenn's sweepstakes for a chance to win free products and services offered by Mayvenn, including Mayvenn's hair products and styling services.[12]  Plaintiff registered for Mayvenn's sweepstakes regarding Mayvenn hair products on February 10, 2020.  Within three months of that initial application and communication from Plaintiff, on February 14, 2020, March 2, 2020, and April 24, 2020, and May 4, 2020, Mayvenn sent text messages to the phone number Plaintiff provided, regarding the sweepstakes she entered and the products offered in the sweepstakes.  These communications fall well within the FCC's broad interpretation of the established business relationship exception and bars Plaintiff's TCPA claim.  *See* 47 C.F.R. § 64 1200(f)(5); 2003 FCC Order, at 14080-14082; 47 C.F.R. § 64.1200(c)(2), (f)(5), (15).

Because Plaintiff's sweepstakes entry established a business relationship allowing the messages at issue, the Court should grant summary judgment in favor of Mayvenn.

## IV. PLAINTIFF'S CELLPHONE NUMBER IS A BUSINESS NUMBER THAT DOES NOT QUALIFY FOR PROTECTION UNDER THE DNC RULES

The Court should grant summary judgment in favor of Mayvenn for the separate and independent reason that the phone number at issue is a business number.

### A. To Prevail On a DNC List Claim, Plaintiff Must Show That the Number At Issue Was Not a Business Number

The DNC List regulations do not apply to telephone solicitations made to business numbers listed on the Registry. *National Do Not Call Registry FAQs*, FEDERAL TRADE

---

[12] Courts have also found that Plaintiff's prior express consent to receive text messages may be provided through a web form like the one Plaintiff completed to register for the sweepstakes.  *See Morris v. Modernize, Inc.*, No. 1:17-cv-00963-SS, 2018 WL 7076744, at *3 (W.D. Tex. Sept. 27 2018).  In *Morris*, the court rejected Plaintiff's DNC List claim where defendant consented to the "terms of the disclaimer included on the web form" when the consumer "clicked the [] button and submitted the web form with her personal information").  Here, the Mayvenn sweepstakes rules incorporated its Privacy Policy.  (Choi Decl. ¶ 4, Ex. B.) The operative Privacy Policy provides that Mayvenn may "send [] marketing communications that Mayvenn believe[s] may be of interest to [the individual]."  (*Id.* ¶ 5, Ex. C at 2.)

1  COMMISSION CONSUMER INFORMATION[13] (stating the "Registry is for personal phone numbers"

2  and that "[b]usiness phone numbers and fax lines are not covered"); *Moser v. F.C.C.*, 811 F.

3  Supp. 541, 544 (D. Or. 1992) (recognizing the "asserted purpose" of these regulations

4  promulgated under the TCPA is "enhanced *residential* privacy") (emphasis added); *see also* 2003

5  FCC Order, at 14034 (noting the DNC List is meant to "provide residential consumers with a one-

6  step option to prohibit unwanted telephone solicitations").

7        To determine whether a call is made to a business or residential subscriber, the FCC

8  "review[s] such calls as they are brought to [the FCC's] attention to determine whether or not the

9  call was made to a residential subscriber." *In re Rules and Reguls. Implementing the TCPA of*

10 *1991*, 20 FCC Rcd. 3788, 3793 (2005).  Courts following the FCC's guidance "routinely look[] at

11 the facts and circumstances surrounding a particular case before deciding whether TCPA

12 protection extended to a particular telephone number that was used for both business and

13 residential purposes." *Blevins v. Premium Merch. Funding One, LLC*, No. 2:18-CV-377, 2018

14 WL 5303973, at *2 (S.D. Ohio Oct. 25, 2018) (collecting cases).

15       A phone number is a business number "for the purposes of the TCPA—even if it is

16 registered as 'residential' with the telephone company[,]" if the subscriber "holds out such a

17 telephone number to the general public as a business line[.]" *Bank v. Indep. Energy Grp. LLC*,

18 No. 12-CV-1369, 2014 WL 4954618, at *3 (E.D.N.Y. Oct. 2, 2014) (observing that "[t]his []

19 nuanced approach to the phrase 'residential telephone line' better comports with Congress's

20 intent in enacting the TCPA and with common sense").  A court can resolve the question of

21 whether a telephone number qualifies as a residential number or business number at the summary

22 judgment stage, after the parties conduct discovery. *Id.* at *4.  Where undisputed facts

23 demonstrate that the plaintiff used a personal cellphone as a business line, courts routinely grant

24 summary judgment in favor of the defendant. *See, e.g., Shelton v. Target Advance LLC*, No. CV

25 18-2070, 2019 WL 1641353 (E.D. Pa. Apr. 16, 2019) (granting summary judgment to defendant

---

27  [13] *National Do Not Call Registry FAQs*, FEDERAL TRADE COMMISSION CONSUMER
INFORMATION, https://www.consumer.ftc.gov/articles/national-do-not-call-registry-faqs (stating
the "Registry is for personal phone numbers).

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:20-cv-03917-MMC

sf-4600121

on plaintiff's do-not-call claim for calls made to his personal cellphone where plaintiff registered a business number on the DNC list); *Bank v. Indep. Energy Grp. LLC*, No. 12-CV-1369 JG VMS, 2015 WL 4488070 (E.D.N.Y. July 23, 2015) (granting summary judgment to defendant on plaintiff's TCPA claim where plaintiff held out his number as a business number); *see also Chennette v. Porch.com, Inc.*, 484 F. Supp. 3d 912, 914-15 (D. Idaho 2020) (dismissing plaintiff's TCPA claim where plaintiffs were contractors who used their cellphone numbers to operate a home-based business).

**B.    The Number at Issue is a Business Number Plaintiff Uses for Her Sales Job**

Based on Plaintiff's own testimony and public representations, Plaintiff has used the phone number at issue as a business number.  For the past three years, including the time Plaintiff registered for Mayvenn's sweepstakes, Plaintiff has worked as a sales representative at Impact Merchant Solutions, pitching different credit card payment services to companies.  (Trim Dep. 26:25-28:2.)  Plaintiff testified that in this role, Plaintiff uses two phone numbers to conduct business: her cellphone number at issue in this case and a RingCentral virtual phone number.  (*Id.* 30:2-9, 76:20-77:1.)  Plaintiff testified that she leverages each business number for a different business purpose.  She uses her cellphone to make sales calls to new prospective customers and the RingCentral phone number to handle customer service calls with existing clients.  (*Id.* 77:4-19.)  Indeed, Plaintiff asserted that she was in the midst of pitching a proposal to a potential client on her cellphone — for business purposes — when she received Mayvenn's text in May 2020.[14]

---

[14] The evidence does not support Plaintiff's testimony under oath on this issue.  Records produced by T-Mobile, Plaintiff's cellphone carrier, show that Plaintiff was not in the middle of any call when she received April 24 or May 4, 2020 text messages from Mayvenn.  (Burshteyn Decl. ¶ 4, Ex. D.)  The T-Mobile records show that Ms. Trim received a text from 34649, Mayvenn's number, at 9:27 a.m. Pacific Time on April 24, 2020, but do not indicate any incoming or outgoing phone calls made during this period.  The T-Mobile records indicate that the closest calls around that time was (1) an outgoing call nearly an hour earlier at 8:30 a.m. that lasted 27 seconds, and (2) an outgoing call over a half hour later at 9:59 a.m. that did not appear to connect.  As to the other text at issue received at 9:35 a.m. Pacific Time on May 4, 2020, the T-Mobile records reveal that the closest calls were an outgoing call over 30 minutes prior at 8:56 a.m. that lasted 1 second, and an outgoing call an hour later at 10:35 a.m. that did not connect.  Although Plaintiff's testimony is contradicted by third party documents, Plaintiff's insistence that a Mayvenn text distracted her "during an important phone call . . . in the middle of going over a

1     (*Id.* 62:10-63:7, 64:9-16.)

2            Other evidence establishes that Plaintiff's number at issue in this case is a business

3     number.  On January 22, 2021, Plaintiff appeared in a Facebook video to promote her company's

4     payment solutions.  In the video, the show's hosts introduced Plaintiff as "Lucy Luna[15] from

5     Impact Merchants Solutions," making it clear that she was participating in her business capacity.

6     (Burshteyn Decl. ¶ 6, Ex. F.)  During the interview, Plaintiff discusses various merchant services

7     that her company offered, and later invites people to "text or call" her at 818-471-2347 (the cell

8     phone number that received the texts at issue) for additional tips or questions.  (*Id.*)  The video

9     caption also identified Plaintiff as "Lucy Luna from Impact Merchant Solutions" and instructed

10    the public to "[e]mail her ... or call her [at] 818-471-2347."  (*Id.* at pp. 12-18.)  This video

11    confirms that Plaintiff invited prospective customers to use her cellphone number for business

12    purposes.

13           Courts in such situations find that the numbers at issue are business numbers.  *See*, *e.g.*,

14    *Bank*, 2015 WL 4488070 (granting summary judgment on TCPA claim where "ample evidence"

15    showed the plaintiff's number was a business number).  *Bank* concluded that a TCPA plaintiff

16    "held out [his number] to the public as a business line" when he listed his personal number as his

17    law firm's number in professional correspondence, on his business card, and in an attorney

18    directory aimed at generating business leads.  *Id.* at *2; *see also Shelton*, 2019 WL 1641353, at

19    *1, 6 (granting summary judgment on plaintiff's claim because he held his number "out to the

20    world as a business phone number" by using it to run his business).[16]  Here too, because

21    _____

22    proposal" with a "client" demonstrates that she was using her cell phone as a business phone.
      (Trim Dep 62:10-63:2.)

23           [15] Plaintiff clarifies in the interview that Lucy Luna is the name she uses on Facebook, but
24    that her actual name is Lucy Trim.  (Burshteyn Decl. ¶ 6, Ex. F.)

25           [16] To the extent Plaintiff also uses her cellphone for some personal purposes, this cannot
      overcome the fact that her personal number is a business number.  *Cf. Southwell v. Mortg. Invs.*
26    *Corp. of Ohio*, No. C13-1289 MJP, 2014 WL 4057166, at *3 (W.D. Wash. Aug. 14, 2014)
      (finding that plaintiff's cell phone was not a business number, even though he used it so sell
27    sheep to friends occasionally, because it was not something done for profit).  Unlike the farmer in
      *Southwell*, Plaintiff does profit from using her phone number for business, rather than as a home-
      based hobby with friends.  *See* Trim Dep. 62:5-9 (testifying that "in sales, the way I make my
28    actual money is by residual income").  That Plaintiff may use her cellphone for personal purposes

DEFENDANT'S NOTICE OF MOTION AND
MOTION FOR SUMMARY JUDGMENT
CASE NO.: 3:20-cv-03917-MMC

Plaintiff's cell phone number is a business number she uses for her job, she cannot maintain any claim for text messages she received at her business number based on regulations that apply only to residential lines.

**V.      CONCLUSION**

For the above reasons, Mayvenn respectfully requests that the Court grant its motion for summary judgment.

Dated:       January 19, 2022                TIFFANY CHEUNG
                                             MICHAEL BURSHTEYN
                                             MORRISON & FOERSTER LLP


                                             By:   /s/ Tiffany Cheung
                                                   TIFFANY CHEUNG

                                             Attorneys for Defendant
                                             MAYVENN, INC.

as well does not bar Mayvenn's defense where Plaintiff has publicly held out her cellphone number as her business line.

sf-4600121