Rachel E. Kaufman (csb# 259353)
*rachel@kaufmanpa.com*
Kaufman P.A.
237 S. Dixie Hwy, 4th Floor
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff Lucine Trim and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCINE TRIM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MAYVENN, INC.,<br><br>Defendant. | Case No. 3:20-cv-03917-MMC<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Judge: Hon. Maxine M. Chesney<br>Complaint filed: June 15, 2020<br>Hearing Date: April 8, 2022<br>Time: 9:00 am<br>Courtroom: 7, 19th Floor |

# TABLE OF CONTENTS

FACTS ..................................................................................................................................2

ARGUMENT .........................................................................................................................3

    I.    Plaintiff has standing because she received Mayvenn's TCPA violative texts and they were a nuisance, distracted her, wasted her time, and invaded her privacy. ..............5

    II.    Plaintiff did not have an established relationship with Mayvenn based on entering a sweepstakes for a free makeover and trip to Las Vegas. ...........................................7

    III.    Plaintiff's NDNCR Registered Cellular Phone Number is "Residential" and Therefore Entitled to the TCPA's Protections. .........................................................9

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090 (W.D. Pa. July 31, 2018) ................................................................................................................................... 6

*Bacon v. Artificial Grass Liquidators Location 1, Inc.*, No. 8:18-cv-01220-JLS-ADS, 2019 U.S. Dist. LEXIS 231120 (C.D. Cal. May 1, 2019) ................................................................. 5

*Baker v. Certified Payment Processing, L.P.*, 2016 U.S. Dist. LEXIS 78368 (C.D. Ill. June 2016) ....... 10

*Bank v. Indep. Energy Grp., LLC,* 2015 U.S. Dist LEXIS 96532 (E.D.N.Y. July 23, 2015).................... 12

*Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335 (2020)………………………………….7

*Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964 (N.D. Cal. 2019) ................................. 2, 9

*Blevins v. Premium Merch. Funding One, LLC*, No. 2:18-cv-377, 2018 U.S. Dist. LEXIS 183362 (S.D. Ohio Oct. 25, 2018) ................................................................................................ 12

*Chennette v. Porch*, 484 F. Supp. 3d 912 (D. Idaho 2020)........................................................ 13

*Clauss v. Legend Sec., Inc.*, No. 4:13-cv-00381-JAJ, 2014 U.S. Dist. LEXIS 184286 (S.D. Iowa Sep. 8, 2014) ................................................................................................................. 12

*Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187 (M.D. Tenn. 2017)............ 6, 7

*Garcia v. Credit One Bank, NA.,* No. 218CV19 I JCMEJY, 2020 U.S. Dist. LEXIS 136881 (D. Nev. July 31, 2020) ....................................................................................................... 5

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)....................... 3

*Mantha v. Quotewizard.com, LLC,* No. 19-12235-LTS1, 2021 U.S. Dist. LEXIS 245059 (D. Mass. Dec. 3, 2021) ........................................................................................................ 15

*Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771 (N.D.W. Va. 2017)............................................ 6

*Morris v. Modernize, Inc.*, No. AU-17-CA-00963-SS, 2018 U.S. Dist. LEXIS 232701 (W.D. Tex. Sep. 27, 2018) ................................................................................................................. 9

*Moser v. Health Ins. Innovs., Inc.*, No. 17cv1127-WQH(KSC), 2018 U.S. Dist. LEXIS 215901 (S.D. Cal. Dec. 21, 2018) .................................................................................................... 5

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006)................................................... 6

*N.L. v. Credit One Bank, N.A.*, No. 2:17-cv-01512-JAM-DB, 2018 U.S. Dist. LEXIS 191497 (E.D. Cal. Nov. 8, 2018) ............................................................................................................. 4

*Nat'l Fed'n of the Blind v. FTC*, 303 F. Supp. 2d 707 (D. Md. 2004) ........................................... 8

*Physicians Healthsource, Inc. v. Masimo Corp.,* No. SACV 14-00001 JVS (ADSx), 2019 U.S. Dist. LEXIS 228607 (C.D. Cal. Nov. 21, 2019)................................................................... 5

*Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151 (9th Cir. 2007) ............................................................. 3
*Riley v. California*, 573 U.S. 373, 134 S. Ct. 2473 (2014) ................................................................ 12
*Shelton v. Target Advance LLC*, No. 18-2070, 2019 U.S. Dist. LEXIS 64713 (E.D. Pa. Apr. 16, 2019) 13
*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ................................................................................. 3
*Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016) ........................................ 5
*Sunrider Corp. v. Bountiful Biotech Corp.,* 2010 U.S. Dist. LEXIS 117347, 2010 WL 4590766 (C.D. Cal. Oct. 8, 2010) .............................................................................................................................. 8
*Trim v. Mayvenn, Inc.,* No. 20-cv-03917-MMC, 2020 U.S. Dist. LEXIS 205361 (N.D. Cal. Nov. 3, 2020) ................................................................................................................................................. 4
*United States v. Dish Network, L.L.C.*, No. 09-3073, 2011 U.S. Dist. LEXIS 2200 (C.D. Ill. Jan. 10, 2011) ................................................................................................................................................. 8
*United States v. Electric Mobility Corp.*, No. 11-cv-2218, Stipulated Judgment and Order for Permanent Injunction (ECF 3) (D.N.J. April 19, 2011) ................................................................ 1, 8
*United States v. Kitsap Physicians Serv.*, 314 F.3d 995 (9th Cir. 2002) ......................................... 8
*Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017) .................................. 13

**Other Authorities**
16 C.F.R. § 310.2(q) ............................................................................................................................ 8
18 FCC Rcd. 14014 ...................................................................................................................... 10, 11
47 C.F.R. § 64.1200 ...................................................................................................................... 7, 10
47 C.F.R. § 64.2305 .......................................................................................................................... 10
FTC Biennial Report to Congress, available at: https://www.ftc.gov/system/files/documents/reports/biennial-report-congress-under-do-not-call-registry-fee-extension-act-2007-operation-national-do-not/biennial_do_not_call_report_fy_2016-2017_0.pdf (last visited Feb. 16, 2022) ............................................................................................ 8
*In re FCC Enf't Advisory: TCP Act Robocall & Text Rules et al.*, 31 FCC Rcd. 1940 (2016) ................ 7
*Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 20 FCC Rcd. 3788, 3793 (2005) ............................................................................................................................ 10

Mayvenn's summary judgment motion fails on all bases.

First, Plaintiff has standing because Plaintiff was injured by the unsolicited text messages Mayvenn sent to her National Do Not Call Registry registered cellular phone number in the precise ways the Ninth Circuit has held are sufficient to establish her standing. She received Telephone Consumer Protection Act violative communications which she unequivocally testified were a nuisance that distracted her, wasted her time, and otherwise invaded her privacy.

The fact that Ms. Trim has sought to vindicate her rights in other cases involving similar TCPA violations by other companies does not change the analysis. This is not a case where a consumer has subscribed to many telephone numbers at the same time hoping to receive TCPA violative calls. To the contrary, Plaintiff has had only had one telephone number over the past ten years, which she subscribes to in her own name and personally pays for – the NDNCR registered number Mayvenn sent its texts to. Plaintiff is therefore in the zone of interests protected by the TCPA.

Second, Plaintiff did not have an established business relationship with Mayvenn because she did not purchase or make an inquiry to Mayvenn regarding Mayvenn's products. Instead, she entered a sweepstakes to win a free makeover and trip to Las Vegas. Under the FTC's interpretation of the Telemarketing Sales Rule, which has the identical established business relationship exemption as the TCPA for calls made to NDNCR registered numbers, companies like Mayvenn are prohibited from "Treating the submission of a person's name or telephone number for the purpose of entering a contest or sweepstakes as an established business relationship, and from seeking to obtain authorization to place calls to a person on a form that also requests information from a person for the purpose of entering a contest or sweepstakes." *E.g., United States v. Electric Mobility Corp.*, No. 11-cv-2218, Stipulated Judgment and Order for Permanent Injunction (ECF 3) (D.N.J. April 19, 2011).

The fact that the sweepstakes Plaintiff may have entered had a link to rules which, in turn, ostensibly incorporated Mayvenn's privacy policy, which, then, identified a series of ways that Mayvenn collects consumers' information – not including sweepstakes – and uses that information it collects from sources that do not include sweepstakes does not change that.

Notably, Mayvenn does not even attempt to argue that this language purportedly created an established business relationship with sweepstakes entrants two documents removed from the sweepstakes

entry form gave it consent to text message Plaintiff. Nor could it. Consent to telemarket to an NDNCR registered number must be "express", "written", and obtained in a "clear and conspicuous" manner. *See Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 970 (N.D. Cal. 2019). None of those conditions existed here for sweepstakes entrants like Plaintiff, which is why Mayvenn contrives to argue that its ineffective consent should somehow be interpreted as creating an established business relationship.

Third, Plaintiff's NDNCR registered cellular phone number is entitled to the TCPA's protections because her cellular number was used primarily for personal reasons, registered to her as an individual, was billed to her home address, and was paid for by her personally. And it was precisely in this capacity as a consumer using her personal cellular phone number that Mayvenn sent telemarketing texts to her.

The fact that Plaintiff may have at times used her personal number or device also for business calls does alter this, particularly when plaintiff had a cloud-based business number supplied and paid for by her employer that she was able to access using an app on the same cellular device associated with her NDNCR registered number.

**FACTS**

Mayvenn sent Plaintiff Trim multiple unsolicited telemarketing text messages to her National Do Not Call Registry registered, personal cellular phone number. Declaration of Rachel E. Kaufman attached as Exhibit A, at Exhibit 1, excerpts from Deposition of Plaintiff Trim ("Trim Depo."), at 62:2-4, 65:6-7, 62:12-18, 85:10-11, 99:22-101:9. These texts were a nuisance that distracted her, wasted her time, and invaded her privacy. *Id*. Mayvenn sent these text messages to the number (818) 471-XXXX, which, for at least the past ten years, is Ms. Trim's sole, personal telephone number, subscribed to in her own name, and paid for by her personally without any contribution from her employer. Trim Depo. at 23:21-24:4, 120:13-21; Declaration of Plaintiff Trim ("Trim Decl."), attached as Exhibit B.

In addition to her NDNCR registered personal cellular phone number, for work, Ms. Trim regularly uses a cloud-based number supplied by her employer through a service called RingCentral that has an app for cellular phones. *See* Trim Decl. at ¶¶ 3-8; Trim Depo. at 30:3-8. The RingCentral app is loaded to the cellular device associated with her NDNCR registered personal cellular phone number, but uses a *different phone number*. *Id*. The business calls made through the RingCentral app on her cellular device use the phone number (805) 917-XXXX. *Id*. So while Ms. Trim occasionally uses the same physical device for

work calls, she primarily does using a number other than her personal, NDNCR registered number. *See id.*; Trim Depo. 30:5-6.

## ARGUMENT

**I.  Plaintiff has standing because she received Mayvenn's TCPA violative texts and they were a nuisance, distracted her, wasted her time, and invaded her privacy.**

Article III of the Constitution requires that courts adjudicate only actual cases or controversies. U.S. Const. art. III, § 2, cl. 1; *see also Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007). To meet this "irreducible constitutional minimum," a plaintiff must prove that she has standing, which requires that the plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

This is Mayvenn's second attempt to claim that the Plaintiff does not have Article III standing to pursue her claim, and just like its attempt at the motion to dismiss phase, its argument here fails. As this Court concluded in denying Mayvenn's motion to dismiss, as a matter of Ninth Circuit law, a TCPA violation is a concrete injury that itself establishes Article III standing with nothing more:

> In Van Patten v. Vertical Fitness Group, LLC, 847 F.3d 1037 (9th Cir. 2017), the Ninth Circuit, noting "Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm," held "a violation of the TCPA is a concrete, de facto injury." See id. at 1043. Here, Trim, as noted, alleges she received unsolicited telemarketing messages from Mayvenn, and, relying on Van Patten, asserts she "need not allege any additional harm." (See Opp. at 2:24-3:2 (quoting Van Patten).)
>
> Nevertheless, Mayvenn argues, Trim's claims fail because she "does not allege actually reading, reviewing, or spending any time on [the] text messages" (see Mot. at 2:23-24), and, "[b]ased on recent trends in TCPA jurisprudence, [Trim's] alleged receipt of two text messages does not establish Article III standing" (see id. at 2:14-15). As set forth below, however, the cases on which Mayvenn relies in support of such argument (see Mot. at 3:5-5:9), are readily distinguishable.

> First, Shuckett v. DialAmerica Marketing, Inc., No. 17-cv-2073-LAB, 2019 U.S. Dist. LEXIS 127049, 2019 WL 3429184 (S.D. Cal. July 29, 2019), concerned a telephone call, not a text message, and the district court, in granting the defendant's motion for summary judgment, found there was no evidence the plaintiff therein was aware of the call, which "went unanswered." See 2019 U.S. Dist. LEXIS 127049, [WL] at *3. Next, Selby v. Ocwen Loan Servicing, LLC, No. 3:17-CV-973-CAB-BLM, 2017 U.S. Dist. LEXIS 189995, 2017 WL 5495095 (S.D. Cal. Nov. 16, 2017), concerned debt collection calls, which the District Court held were not covered under the TCPA. See 2017 U.S. Dist. LEXIS 189995, [WL] at *3 (finding "the TCPA was not intended to protect any concrete interests associated with calls from debt collectors or creditors"). Mayvenn's reliance on the remaining cases likewise is misplaced, as each such case relied on the law of the Eleventh Circuit, which, unlike the Ninth Circuit, has held "receiving a single text message" is "not a basis for invoking the jurisdiction of federal courts." See Salcedo v. Hanna, 936 F.3d 1162, 1172 (11th Cir. 2019) (holding "[t]he chirp, buzz, or blink of a cell phone receiving a single text message" is insufficient to state a concrete harm; noting Ninth Circuit "has reached the opposite conclusion"); see, e.g., Fenwick v. Orthopedic Specialty Inst., PLLC, No. 19-CV-62290, 2020 U.S. Dist. LEXIS 21566, 2020 WL 913321, at *5 (S.D. Fla. Feb. 4, 2020) (dismissing TCPA claim alleging receipt of two text messages; citing Salcedo).

Trim v. Mayvenn, Inc., No. 20-cv-03917-MMC, 2020 U.S. Dist. LEXIS 205361, at *4-6 (N.D. Cal. Nov. 3, 2020).

Even though a "a violation of the TCPA is a concrete, de facto injury." Van Patten, 847 F.3d at 1043 (9th Cir. 2017), Ms. Trim also testified that Mayvenn's texts were a nuisance that distracted her, wasted her time, and invaded her privacy. Trim Depo. at 62:2-4, 65:6-7, 62:12-18.[1] Mayvenn cannot dispute Ms. Trim's testimony on this and therefore appears to argue that Plaintiff was obligated to text "Stop" to have standing to pursue her claims. See, e.g., N.L. v. Credit One Bank, N.A., No. 2:17-cv-01512-JAM-DB, 2018 U.S. Dist. LEXIS 191497, at *10-11 (E.D. Cal. Nov. 8, 2018) ("Credit One asserts that the calls did not cause Plaintiff any actual harm and that he allowed the calls to continue after consulting with legal counsel. This theory misstates the injury required to bring a TCPA claim and assumes a failure to mitigate statutory damages where no such duty existed."). Mayvenn also attempts to portray

---

[1] As explained below, Ms. Trim regularly uses a cloud-based number through an app on her cellular device to for work calls as opposed to her NDNCR registered cell phone number. See Trim Decl. Thus, it is irrelevant that Plantiff's AT&T records do not reflect that she was on a call at the time she received of one of Mayvenn's texts as Plaintiff testified she was.

1  Plaintiff as a professional plaintiff outside the TCPA's zone of interests by citing cases involving facts
2  nothing like the ones here.

3  Specifically, Ms. Trim has had only one telephone number over the past ten years, which she
4  subscribes to in her own personal name and pays for personally – the NDNCR registered number Mayvenn
5  sent its texts to. Trim Depo. at 24:1-4. Ms. Trim is nothing like the plaintiff in *Stoops v. Wells Fargo Bank,*
6  *N.A.*, 197 F. Supp. 3d 782, 800 (W.D. Pa. 2016), who "admitted that her only purpose in using her cell
7  phones is to file TCPA lawsuits." Nor is she like the plaintiff in *Garcia v. Credit One Bank, NA.,* No.
8  218CV19 I JCMEJY, 2020 U.S. Dist. LEXIS 136881, *7 (D. Nev. July 31, 2020) who "kept re-purchasing
9  pre-paid phone minutes, apparently in order to keep receiving unwanted calls".

10  The fact that Ms. Trim has sought to vindicate her rights in other cases involving similar TCPA
11  violations by other companies does not change the analysis or entitle Mayvenn, the summary judgment
12  movant, to the unsupported inference that Plaintiff "uses the TCPA as a business."[2] *See Bacon v. Artificial*
13  *Grass Liquidators Location 1, Inc.*, No. 8:18-cv-01220-JLS-ADS, 2019 U.S. Dist. LEXIS 231120, at *5
14  (C.D. Cal. May 1, 2019) (cited by Mayvenn) ("Assuming without deciding that *Stoops* was correctly
15  decided, it was resolved on a summary judgment motion based on the plaintiff's deposition testimony. …
16  Here, there is simply nothing in Plaintiff's Complaint suggesting that he uses the TCPA 'as a business
17  venture.'"); *Moser v. Health Ins. Innovs., Inc.*, No. 17cv1127-WQH(KSC), 2018 U.S. Dist. LEXIS
18  215901, at *42-43 (S.D. Cal. Dec. 21, 2018) (cited by Mayvenn) (finding that the defendant was entitled
19  to discovery concerning whether the plaintiff was like the plaintiff in *Stoops*).

20  In fact, other courts in this Circuit have rejected this argument by defendants like Mayvenn at the
21  summary judgment state under similar circumstances. *See Physicians Healthsource, Inc. v. Masimo Corp.,*
22  No. SACV 14-00001 JVS (ADSx), 2019 U.S. Dist. LEXIS 228607, at *47-48 (C.D. Cal. Nov. 21, 2019)
23  ("Here, unlike *Stoops…,* where a plaintiff bought multiple mobile phones in the hopes of receiving calls
24  from creditors to file TCPA lawsuits, Plaintiffs each had a fax machine for purposes of their medical
25  practices, not for the purpose of collecting unsolicited advertisements for TCPA lawsuits. … The receipt
26  and collection of advertisements was done in response to the receipt of ads by the fax machine, but the

---

[2] Notably, it is undisputed that, as Ms. Trim testified, she does not "regularly send text messages [she] receives (like Mayvenn's)] to her attorneys" to file TCPA lawsuits. Trim Depo. at 65:6-7, 69:13-18.

fax machine served a legitimate business purpose. Thus, the Court disagrees that Plaintiffs are outside of the zone of interest of the TCPA.").

Mayvenn's position appears to be that if a consumer like Plaintiff, fed up with unsolicited telemarketing, takes the affirmative step of fighting back against the senders of those calls, she is deprived of standing. But "nothing in the Constitution, though, requires a plaintiff to be a naïf. Litigation is not college athletics: there is no 'amateurs only' rule." *Cunningham v. Rapid Response Monitoring Servs.*, 251 F. Supp. 3d 1187, 1195 (M.D. Tenn. 2017). *See also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("What the district judge did not explain, though, is why 'professional [plaintiff]' is a dirty word. It implies experience, if not expertise. The district judge did not cite a single decision supporting the proposition that someone whose rights have been violated by 50 different persons may sue only a subset of the offenders."); *Abramson v. Oasis Power LLC*, No. 2:18-cv-00479, 2018 U.S. Dist. LEXIS 129090, at *16 (W.D. Pa. July 31, 2018) ("As other courts addressing this issue have agreed, a citizen's decision to aggressively enforce his rights under the TCPA should not negate otherwise valid privacy interests").

While Mayvenn is "understandably frustrated", Plaintiff is doing "exactly what Congress intended—enforcing the law." *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W. Va. 2017). Congress was well aware of this possibility when it passed the TCPA, and no general rule requires plaintiffs to end up worse off than before the defendant injured them to prove their cases:

> The determinative issue, then, is not Cunningham's motivations, but whether he was injured. An ordinary consumer who pled the facts that Cunningham has pled would have established a concrete and particularized injury-in-fact based on the Defendants' intrusion upon his rights to privacy and seclusion. Defendants suggest that, by becoming a so-called "professional plaintiff," he has forfeited those rights because the calls alleged were not truly unwanted. Insofar as *Stoops* endorses such a result, this Court disagrees. It may be that Cunningham was not saddened or annoyed by the calls he received; it may even be that, knowing his rights under the TCPA, he is glad the calls were placed. But allowing that fact, even if true, to negate his right to privacy and seclusion would require the Court to embrace a line of reasoning that would ultimately undermine the rights of most, if not all, TCPA plaintiffs and plaintiffs in similar statutory schemes.

*Cunningham*, 251 F. Supp. 3d at 1196 (citation omitted) (noting that most people would accept $500 or more in exchange for enduring the privacy violation of a single robocall). Like the defendants in

*Cunningham*, Mayvenn "seem[s] to imagine a Constitution that limits the right to sue under the TCPA to those who are *ignorant* of their right to sue under the TCPA." *Id.* "The Constitution requires no such result." *Id.*

As the Supreme Court recently noted in *Barr*, when the TCPA was passed in 1991, "[c]onsumers were 'outraged' and considered robocalls an invasion of privacy "regardless of the content or the initiator of the message." *Barr v. Am. Ass'n of Political Consultants*, 140 S.Ct. 2335, 2344 (2021). *See also In re FCC Enf't Advisory: TCP Act Robocall & Text Rules et al.*, 31 FCC Rcd. 1940, 1940 (2016) (in reference to political robocalls, stating: "The FCC is committed to protecting consumers from harassing, intrusive, and unwanted robocalls and texts, including to cell phones and other mobile devices.").

Plaintiff is therefore in the zone of interests protected by the TCPA and has standing to pursue her claim against Mayvenn.

## II. Plaintiff did not have an established relationship with Mayvenn based on entering a sweepstakes for a free makeover and trip to Las Vegas.

Second, Plaintiff did not have an established business relationship with Mayvenn because she did not purchase or make an inquiry to Mayvenn regarding Mayvenn's products. *Cf.* 47 C.F.R. § 64.1200(f)(5) ("The term ***established business relationship*** for purposes of telephone solicitations means a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call or on the basis of the subscriber's inquiry or application regarding products or services offered by the entity within the three months immediately preceding the date of the call, which relationship has not been previously terminated by either party.").

Notwithstanding, without any relevant legal support or citation, *see* Motion at § III(B)(4), Mayvenn argues that Plaintiff created an established business relationship entitling it to send telemarketing text messages to her NDNCR registered cellular phone number when she entered a sweepstakes to win a free makeover and trip to Las Vegas that was sponsored by Mayvenn. While Plaintiff does not recall

entering the sweepstakes, *see* Trim Depo.at 97:15-17, it is irrelevant whether she did because entry into the sweepstakes could not have created an established business relationship.[3]

Under the FTC's interpretation of the Telemarketing Sales Rule, which has the identical established business relationship exemption as the TCPA for calls made to NDNCR registered numbers, *compare* 16 C.F.R. § 310.2(q) *with* 47 C.F.R. 64.1200(f)(5), companies like Mayvenn are prohibited from "Treating the submission of a person's name or telephone number for the purpose of entering a contest or sweepstakes as an established business relationship, and from seeking to obtain authorization to place calls to a person on a form that also requests information from a person for the purpose of entering a contest or sweepstakes." *E.g., United States v. Electric Mobility Corp.*, No. 11-cv-2218, Stipulated Judgment and Order for Permanent Injunction (ECF 3) (D.N.J. April 19, 2011); FTC Biennial Report to Congress, available at: https://www.ftc.gov/system/files/documents/reports/biennial-report-congress-under-do-not-call-registry-fee-extension-act-2007-operation-national-do-not/biennial_do_not_call_report_fy_2016-2017_0.pdf (last visited Feb. 16, 2022), and attached as Exhibit C, at 7 ("[A] sweepstakes entry form does not create an established business relationship …. Companies have agreed to pay civil penalties for making illegal calls that relied upon sweepstake entry forms entry forms as a basis for making telemarketing calls.").[4]

---

[3] Mayvenn's spoliation argument is therefore both irrelevant and wrong. It is irrelevant because even if there was proof on Plaintiff's cellular device that she entered the sweepstakes it wouldn't prove the existence of an established business relationship. It is wrong because Plaintiff was not obligated to preserve irrelevant electronic information months before knowing Mayvenn would send her unwanted and unsolicited marketing text messages. *See Sunrider Corp. v. Bountiful Biotech Corp.,* 2010 U.S. Dist. LEXIS 117347, 2010 WL 4590766, at *29 (C.D. Cal. Oct. 8, 2010) ("The obligation to preserve relevant evidence attaches when litigation is pending or reasonably foreseeable") *see also United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir. 2002) (finding no spoliation because the defendant was not on notice of a "future, specific" lawsuit).

[4] The TSR and TCPA are intended to work in tandem and are interpreted in the same manner. *E.g., United States v. Dish Network, L.L.C.*, No. 09-3073, 2011 U.S. Dist. LEXIS 2200, at *4 (C.D. Ill. Jan. 10, 2011) ("Since October 17, 2003, the TSR and rules promulgated by the Federal Communications Commission (FCC) under the TCPA have prohibited sellers and telemarketers from calling consumers' telephone numbers registered on the National Do Not Call Registry and State Do Not Call Registries."); *Nat'l Fed'n of the Blind v. FTC*, 303 F. Supp. 2d 707, 712 (D. Md. 2004) ("In early 2003, after the TSR was promulgated, Congress instructed the FCC to consult with the FTC to maximize consistency with the FTC's rules. In July 2003, the FCC released its final report amending the TCPA rules. The amended rules contain nearly identical provisions to those of the TSR ….").

The fact that the sweepstakes Plaintiff may have entered had rules that purportedly incorporated Mayvenn's privacy policy does not support a different conclusion. *See* ECF 58-2, 58-3. In fact, although Mayvenn's privacy policy identified a series of ways that Mayvenn collects consumers' information, it does not identify information obtained through sweepstakes as one of its sources. *See* ECF 58-4 (privacy policy at 1-2). Therefore, it is irrelevant that the sweepstakes rules may have incorporated Mayvenn's privacy policy that notified consumers whose information Mayvenn collected from sources other than sweepstakes that they may be contacted regarding Mayvenn's products.[5]

Instead, the only conclusion is that regardless of whether Plaintiff registered for the sweepstakes Mayvenn sponsored, Mayvenn was not authorized to telemarket to Plaintiff's NDNCR registered cellular phone number. And consistent with this, Plaintiff had no expectation that Mayvenn would telemarket to her. *See* Trim Depo. at 85:10-11 ("the first time I heard about Mayvenn was from this text message that I got").

The Court should therefore deny Mayvenn's request for summary judgment on this basis.

### III. Plaintiff's NDNCR Registered Cellular Phone Number is "Residential" and Therefore Entitled to the TCPA's Protections.

Mayvenn's motion requests that this Court undercut the TCPA's NDNCR protections. If the Court accepts Mayvenn's interpretation of the law, and, by judicial fiat, creates a gap in the TCPA's NDNCR protections millions of Americans who use their personal cellular phone numbers and cellular devices occasionally for their jobs tens of millions will lose the protections they sought when registering on the DNC. Other district courts have wisely avoided this misjudgment and denied defendants summary judgment in identical circumstances.

---

[5] Notably, Mayvenn does not argue that this language in its privacy policy constituted consent to telemarket to Plaintiff's NDNCR registered cellular phone number. This is because consent under the TCPA (and TSR) to telemarket to an NDNCR registered number must be "express", "written", and obtained in a "clear and conspicuous" manner. *See Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 970 (N.D. Cal. 2019). None of those conditions existed here for sweepstakes entrants like Plaintiff, which is why Mayvenn contrives to argue that its ineffective consent should somehow be interpreted as creating an established business relationship. *Cf. Morris v. Modernize, Inc.*, No. AU-17-CA-00963-SS, 2018 U.S. Dist. LEXIS 232701, at *8 (W.D. Tex. Sep. 27, 2018) (cited by Mayvenn) (finding that the plaintiff consented to receive calls to her NDNCR registered number). But there is no reason to conclude that it should.

The National Do Not Call Registry was intended by Congress to protect the personal telephone numbers of consumers be they traditional land lines or wireless cell phones. *See* 47 C.F.R. § 64.1200(e) (citing 18 FCC Rcd. 14014, 14039-40 ¶ 28-36 (recognizing the privacy rights of wireless subscribers and recognizing that DNC protections afforded by 47 U.S.C. 227(c) extend "to wireless telephone numbers"). Such protections, however, do not apply to numbers subscribed to businesses. *See* 47 C.F.R. § 64.1200 (c)(2)(limiting DNC Registry to "residential" subscribed numbers); 18 FCC Rcd. 14014 at ¶ 37 ("The national do-not-call rules will also not prohibit calls to businesses").

Determining the difference between a phone number that is protected by the DNC Registry, and one that is not, simply requires an examination as to whether the number is subscribed to a consumer or to a business. A "business subscriber" is defined by the Code of Federal Regulations as a "subscriber to a telephone exchange service for businesses." *See* 47 C.F.R. § 64.2305(b). A "residential subscriber" is specifically defined as a "subscriber to a telephone exchange service that is not a business subscriber." *See* 47 C.F.R. § 64.2305(d).[6] Accordingly, land lines and wireless numbers subscribed to consumers are protected by the DNC Registry. Land lines and wireless numbers subscribed to businesses are not.

One exception to this bright definitional line, however, arises when a consumer operates a home-based business. In a 2005 Report and Order, telemarketing industry interests petitioned the FCC to exempt from the provisions of the TCPA and the DNC Registry telemarketing calls made to "home based businesses." *See Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991,* 20 FCC Rcd. 3788, 3793 at ¶14 (2005) (Direct Marketing Association petitions the FCC to allow telemarketing calls to numbers listed on the DNC Registry if those numbers are used by a home-based business). In response, the FCC denied the request for the exemption but concluded that it would scrutinize telemarketing calls to home-based businesses to determine "whether or not the call was made to a residential subscriber." *Id. See also Baker v. Certified Payment Processing, L.P.*, 2016 U.S. Dist. LEXIS 78368 * 7 (C.D. Ill. June 2016) (recognizing the protections afforded by the NDNCR to "home based business" that are "residential subscribers"). Accordingly, where an NDNCR registered phone number is

---

[6] The regulatory definitions of "business subscriber" and "residential subscriber" were enacted in 1999, prior to Congress's creation of the NDNCR in 2003. *See* 47 C.F.R. §§ 64.2305(b), (d) (effective date of regulations is October 5, 1999).

used as a home-based business number, an inquiry would have to be made as to whether or not that particular number was "made to a residential subscriber" in order to determine if that number is protected by the TCPA and the NDNCR.

To address industry concerns that cellular wireless numbers subscribed to businesses were impermissibly being listed on the NDNCR, the FCC has noted that a consumer who lists their cellular number on the NDNCR will be presumed to be a "residential telephone subscriber" entitled to the TCPA protections afforded by the NDNCR. *See* 18 F.C.C. Rcd. 14014 at ¶36. To ensure this presumption is not abused, the FCC further recognized that, in the context of an enforcement action, a court may require the consumer/subscriber "to provide further proof of the validity of the presumption" that the wireless number listed on the DNC Registry is entitled to the protection afforded by the TCPA and the DNC Registry and, in fact, is not subscribed to a business. *Id.*

Here, the undisputed evidence shows that Ms. Trim has had only one personal telephone number, (818) 471-XXXX, for at least the past 10 years. *See* Trim Depo. 23-4:21-3. That is the phone number that Mayvenn sent the text messages at issue to. Ms. Trim's employer does not pay for or contribute to her cellular phone bill. *Id.* at 77:20-22. Instead, her cellular phone number is in her name and she personally pays the bills. *Id.* 120:13-21. Ms. Trim's work provides her a RingCentral work phone number, which at times she uses from the cellular device associated with her NDNCR registered number for work calls. *Id.* at 30:3-8.

Mayvenn misunderstands Ms. Trim's use of the device and the various numbers:

- Ms. Trim has personally subscribed to the NDNCR registered cellular telephone number, 818-471-XXXX, for more than 10 years.

- As part of her job responsibilities, she makes outbound sales calls in an attempt to secure new business.

- To make those calls, her work provides her a cloud-based telephone number through a service called RingCentral that has an app for cellular telephones.

- In order to make sales calls for work, she uses the RingCentral app on her cellular telephone.

- The RingCentral app uses a *different* number than her NDNCR registered personal cellular telephone number.

- The business calls made through the RingCentral app on her cell phone use the number 805-917-XXXX.

Trim Decl. at ¶¶ 3-8.

So while Ms. Trim uses the same physical device to make work calls, she primarily does so from a number other than her personal number. As such, her use of her personal number for any business purposes is limited and does not make it a number used for a home-based business or otherwise alter its residential nature. *See, e.g., Blevins v. Premium Merch. Funding One, LLC*, No. 2:18-cv-377, 2018 U.S. Dist. LEXIS 183362, at *6-7 (S.D. Ohio Oct. 25, 2018) (cited by Mayvenn) (finding that "business use of a telephone number registered on the NDNC" does not "*per se* void… its TCPA protections"); *Clauss v. Legend Sec., Inc.*, No. 4:13-cv-00381-JAJ, 2014 U.S. Dist. LEXIS 184286, at *6-7 (S.D. Iowa Sep. 8, 2014) ("Here, there is evidence supporting both the contention that Plaintiff's phone number was a residential phone number and that the phone number was a business phone number. In fact, based on the evidence before the Court, a jury could reasonably conclude that Plaintiff's phone number was simultaneously a residential and business phone, or the number for a home-based business. Whether Plaintiff's phone number was a business number at the time Plaintiff received these calls is a disputed issue of material fact.").[7]

The cases Mayvenn cites in its motion do not dictate otherwise. For example, in *Bank v. Indep. Energy Grp., LLC,* 2015 U.S. Dist LEXIS 96532 (E.D.N.Y. July 23, 2015), the plaintiff operated a law firm out of his home and his NDNCR registered number was primarily a business number as reflected on the plaintiff's business cards, letterhead, pleadings, and other court filings. *Id.* at *4-5. In contrast, here, Plaintiff's NDNCR registered number is primarily a personal number from which she occasionally makes

---

[7] Finding that Plaintiff's occasional use of her NDNCR registered personal cellular number for work calls and a single instance of Plaintiff identifying this number as a number at which she could be reached does not magically transform her number into a business line. Such a finding would undermine Congress's intent in providing protection to the privacy interests of wireless users. "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" *Riley v. California*, 573 U.S. 373, 134 S. Ct. 2473, 2494–95 (2014) (citing *Boyd v. United States*, 116 U.S. 616, 630 (1886)).

work calls for a non-home based business that she does not own and that supplies her a separate business number. *See* Trim Depo. 30:5-6.

In *Shelton v. Target Advance LLC*, No. 18-2070, 2019 U.S. Dist. LEXIS 64713 (E.D. Pa. Apr. 16, 2019), the "Plaintiff's cellphone [was] for both personal and business use. However, based on Plaintiff's allegations, it appear[ed] that the calls at issue were directed and made to the business use of the cellphone, and not to his personal use. Indeed, Defendant provide[d] business loans and merchant cash advance services, and each call Plaintiff allegedly received included 'a scripted sales pitch about business loans and/or merchant cash advance services.'" *Id*. at *12-13; *see also Chennette v. Porch*, 484 F. Supp. 3d 912, 913-15 (D. Idaho 2020) (cited by Mayvenn) ("Plaintiffs also allege 'these are residential phone numbers which Plaintiffs use in their home-based-businesses.' … 'The business model of [Defendants] GoSmith and Porch.com is to sell leads to home improvement contractors.' Plaintiffs allege they are contractors who were being sold leads for potential business. … Since Plaintiffs allege they are contractors operating as a business, they are not covered under the TCPA."). In contrast here, Mayvenn's texts were directed and made to the personal use of Plaintiff's cellular phone number to promote consumer products (wigs and hair extensions) based purportedly on her entry into a sweepstakes for consumers to win a makeover and trip to Las Vegas. *See* Trim Depo. 99-101:22-9.

Ultimately, none of Mayvenn's cases support the conclusion that a consumer's NDNCR registered personal cellular number loses the privacy protections afforded under the TCPA if it is at times used to make work related calls.[8] Such an interpretation is simply untethered to the TCPA, the regulations implementing the TCPA, or the case law interpreting the TCPA. The TCPA is a remedial statute that is to be interpreted in a manner that effectuates its legislative purpose. *See Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1047 (9th Cir. 2017) ("Because the TCPA is a remedial statute intended to protect consumers from unwanted automated telephone calls and messages, it should be construed in accordance with that purpose."). Denying consumers the privacy protections afforded by the TCPA to

---

[8] It is similarly inappropriate to deny Plaintiff the TCPA's protections based on Plaintiff's use of her cellular device to make and receive calls with the work supplied Ring Central number. If business use of a plaintiff's device, as opposed to their number, were relevant, any consumer with access to their work email from their personal cellular phone would be denied protection. This would be an absurd result.

13
Plaintiff's Response to Motion for Summary Judgment
Case No. 3:20-cv-03917-MMC

their NDNCR registered wireless numbers simply because they occasionally used their personal wireless number to make work related calls would eviscerate the TCPA and the DNC Registry.

Indeed, just a few months ago, in another TCPA case involving substantively similar facts relating to the plaintiff's occasional business use of an otherwise personal NDNCR registered cellular number, the district court *granted summary judgment for the Plaintiff* on precisely this issue:

> Defendant next argues that because plaintiff used his cellular number for both personal and business purposes, it was not a residential line and therefore should not be afforded protection under the TCPA. (#202 at 12-13.) Plaintiff cross-moves for summary judgment on this issue, contending that he was a residential subscriber because his cellular number was registered to him as an individual, was billed to his home address, and was paid for as part of a family plan. (#221-2 at 7-8, 10; #209 at 22.)
>
> Calls and texts to numbers listed on the DNC registry violate the TCPA. 47 C.F.R. § 1200(c)(2). However, the TCPA's DNC registry protects residential numbers only, not numbers associated with a business. *Id.* (defining DNC protections in relation to "residential telephone subscriber[s]"). The FCC "presumes that wireless subscribers who ask to be put on the National Do Not Call Registry are residential subscribers." *Barton*, 525 F. Supp. 3d at 202. "[B]ecause the TCPA is a consumer protection statute, [courts] must interpret it broadly in favor of consumers." *Breda v. Cellco P'ship*, 934 F.3d 1, 10 (1st Cir. 2019).
>
> Defendant argues that a residential number and a number used for personal purposes are not equivalent under the TCPA and its regulations, and that DNC protection is limited to phones used in a residential context. (#230 at 3-4.) Yet by extending DNC protection to cellular numbers, which are inherently mobile and not limited to use in the home, it is reasonable to interpret the TCPA and its relevant regulations as extending DNC protection to cellular numbers that are not used exclusively in the home. *See In re Rules* 2003 ¶ 36 ("[A]lthough Congress expressed concern with residential privacy, it also was concerned with the nuisance, expense and burden that telephone solicitations place on consumers."); *id.* (separate statement of FCC Chairman Michael K. Powell) (noting that the FCC's revised rules "make[] the American consumer's toolbox more complete by creating a national do not call list and strengthening and modifying our other longstanding protections under the TCPA. Our goal: to maximize consumers' ability to control the messages they receive on their *personal phones* and faxes." (emphasis added)); *see also McEwen v. NRA of Am.*, No. 2:20-cv-00153, 2021 U.S. Dist. LEXIS 72133, at *16 (D. Me. Apr. 14, 2021) ("[T]he FCC has extended its do-not-call regulations *to encompass both residential land lines and personal cellphones.*" (emphasis added)).

> The parties do not dispute that plaintiff's cellular number was registered in his name or that the service plan for that number was billed to his home address. His number was not issued by his employer nor was it in his employer's name. Having considered both motions separately as they relate to this issue, the court recommends granting summary judgment in favor of plaintiff by finding that DNC protection applied to his number because he was a residential subscriber. *See Scott*, 550 U.S. at 380.

*Mantha v. Quotewizard.com, LLC,* No. 19-12235-LTS1, 2021 U.S. Dist. LEXIS 245059, at *11-14 (D. Mass. Dec. 3, 2021). The same result should obtain here for the same reasons.

Mayvenn's summary judgment motion on this ground should therefore be denied.

## CONCLUSION

Each of Mayvenn's arguments fails as a matter of law and fact.

Plaintiff has standing because she received TCPA violative communications from Mayvenn that were a nuisance that wasted her time, distracted her, and otherwise invaded her privacy.

Mayvenn was not authorized to send telemarketing text messages to Plaintiff's NDNCR registered number because Plaintiff did not create an established business relationship with Mayvenn regardless of whether she entered a sweepstakes for a makeover and trip to Las Vegas Mayvenn sponsored.

And Plaintiff's occasional use of her NDNCR personal registered cellular phone number to make work related calls does not preclude her from being protected by the TCPA for texts sent to Mayvenn intended for Plaintiff personally as a consumer. Nor does using the device to make work calls using a cloud-based work number.

The Court should therefore deny Mayvenn's summary judgment motion in total.

Dated: February 16, 2022                    Respectfully submitted,

By: /s/ Rachel E. Kaufman
　　Rachel E. Kaufman
　　KAUFMAN P.A.
　　*Attorney for Plaintiff and the Proposed Class*