IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUCINE TRIM,<br><br>    Plaintiff,<br><br>  v.<br><br>MAYVENN, INC.,<br><br>    Defendant. | Case No. 20-cv-03917-MMC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; VACATING HEARING** |

Before the Court is defendant Mayvenn, Inc.'s ("Mayvenn") "Motion for Summary Judgment," filed January 19, 2022. Plaintiff Lucine Trim ("Trim") has filed opposition, to which Mayvenn has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter appropriate for decision on the parties' respective written submissions, VACATES the hearing scheduled for April 8, 2022, and rules as follows.

**BACKGROUND**

In the operative complaint, the First Amended Complaint ("FAC"), Trim alleges she has a cellular telephone number that has been registered on the National Do Not Call Registry (hereinafter, "NDNC Registry") since December 3, 2019. (See FAC ¶¶ 45-46.) Trim alleges that, on April 24, 2020, she received the following text message from Mayvenn on her cellular phone:

> When you want something fun, quick and protective for your hair? WIG. Shop these ready to wear units: https://mvnn.co/uJwLvIY - Reply HELP for help, STOP to quit.

(See FAC ¶ 42.) Trim further alleges that, on May 4, 2020, she received a second text message from Mayvenn on her cellular phone, which read as follows:

> Mother's day is soon. Forget the florist, what she really wants is a wig. No-contact delivery goes right to her door: https://mvnn.co/9tTRKWf - Reply HELP for help, STOP to quit.

(See id.)

According to Trim, she "has never provided prior express written consent to receive" text messages from Mayvenn, and the messages "invaded" her "privacy and solitude," "wasted" her time, "annoyed" her, "harassed" her, and "consumed the battery life and memory of [her] . . . cellular telephone[]." (See FAC ¶¶ 48-49.)

Based on the above allegations, Trim asserts, on behalf of herself and a putative class, a claim for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[1]

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact. Once the moving party has done so, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation omitted). "When the moving party has carried its burden under Rule 56[ ], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

---

[1] Trim also asserted a second TCPA claim, which she voluntarily dismissed on October 15, 2021.

"If the [opposing party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Liberty Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the underlying facts," however, "must be viewed in the light most favorable to the party opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation omitted).

## DISCUSSION

In the instant motion, Mayvenn seeks summary judgment on the grounds that (1) Trim falls outside the TCPA's zone of interests and thus lacks standing, (2) Mayvenn has an established business relationship ("EBR") with Trim, and (3) the phone number at issue is a business number that does not qualify for protection under the TCPA.

### A.  Standing

"[A] statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 129 (2014) (internal quotation and citation omitted).[2] To determine whether a plaintiff falls within a statute's zone of interests, courts must ask "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." See id. at 127.

The TCPA was created in response to consumer complaints about "the proliferation of intrusive, nuisance telemarketing calls to their homes," see Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 372 (2012) (internal quotation, citation, and alteration omitted), and, "[b]ecause the TCPA is a remedial statute intended to protect consumers from unwanted . . . telephone calls and messages, . . . it should be construed in accordance with that purpose," see Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037, 1047 (9th Cir. 2017).

---

[2] Although Mayvenn frames its argument as a challenge to "Article III standing" (see Mot. at 11:3-5), "whether a plaintiff comes within the zone of interests" is not an issue bearing on Article III standing, but, rather, "an issue [of] . . . statutory interpretation," see Lexmark, 572 U.S. at 125-27. Consequently, the Court construes Mayvenn's argument as a challenge to Trim's statutory standing.

Mayvenn contends Trim falls outside the TCPA's zone of interests because she is a "[p]rofessional TCPA plaintiff[]" who files TCPA actions "as a means to generate revenue." (See Mot. at 10:13-21.) In support of such argument, Mayvenn has identified twelve other TCPA actions filed by Trim within the past four years (see Decl. of Michael Burshteyn in Supp. of Def.'s Mot. for Summ. J. (hereinafter, "Burshteyn Decl.") ¶ 7, Ex. G) and submitted evidence that Trim, at a deposition, did not recollect the details or status of some of those lawsuits (see Dep. of Lucine Trim (hereinafter, "Trim Dep.") at 147:20-180:12).[3]

Although some district courts have found that, under certain circumstances, the TCPA may not encompass the interests of plaintiffs who file TCPA actions "as a business," see Stoops v. Wells Fargo Bank, N.A., 197 F. Supp. 3d 782, 787-89, 805-06 (W.D. Pa. 2016) (finding no standing where plaintiff "admitted" she acquired 35 cellular phones for sole purpose of filing TCPA actions "as a business"); see also Garcia v. Credit One Bank, N.A., Case No. 2:18-CV-191 JCM (EJY), 2020 WL 4431679, at *1, 3 (D. Nev. July 31, 2020) (finding no standing where plaintiff "maintained several cell phones simultaneously" and "kept pre-purchasing pre-paid phone minutes[] . . . in order to keep receiving unwanted calls"), the Ninth Circuit has stated that "the term 'professional,' as in 'professional plaintiff,' is not a 'dirty word' and should not itself undermine one's ability to seek redress for injuries suffered," see Gordon v. Virtumundo, Inc. 575 F.3d 1040, 1056 (9th Cir. 2009) (internal citation omitted).

Here, Mayvenn has submitted no evidence that Trim "seeks to receive" or "attract" telemarketing calls, or that any of her other TCPA actions are frivolous. See Mey v. Venture Data, LLC, 245 F. Supp. 3d 771, 783-84 (N.D. W. Va. 2017) (finding filing of prior TCPA cases and use of "sophisticated" equipment "to record and document TCPA calls" did not deprive plaintiff of standing "any more than the purchase of a burglar alarm would

---

[3] Excerpts from the Deposition of Lucine Trim are filed as Exhibit A to the Burshteyn Declaration and Exhibit 1 to the Declaration of Rachel E. Kaufman.

indicate that the homeowner wanted her house to be broken into"). Moreover, courts have declined to find TCPA plaintiffs lack standing where, as here, "the phone number [at issue] was not procured for the express purpose of receiving calls on which to base future TCPA litigation." See Perrong v. Victory Phones LLC, Case No. 20-5317, 2021 WL 3007258, at *6 (E.D. Penn. July 15, 2021) (noting "Stoops is the narrow exception to TCPA statutory standing"; collecting cases distinguishing Stoops); (see also Trim Dep. at 24:1-20 (asserting Trim has used same personal cellular phone number for "over ten years")).

Mayvenn further contends Trim's failure to "complain" or "respond with a 'STOP' message" upon receiving the first text from Mayvenn shows that she "took steps to allow the continuance of the injury while building a record to facilitate a later claim." (See Mot. at 10:13-11:2.) Such argument, however, "misstates the injury required to bring a TCPA claim and assumes a failure to mitigate statutory damages where no such duty exist[s]." See N.L. v. Credit One Bank, N.A., Case No. 2:17-cv-01512-JAM-DB, 2018 WL 5880796, at *4 (E.D. Cal. Nov. 8, 2018) (rejecting argument that plaintiff who "allowed the calls to continue after consulting with legal counsel" lacked standing to bring TCPA claim); see also Ahmed v. HSBC Bank USA, Nat'l Assoc., Case No. ED CV 15-2057 FMO (SPx), 2017 WL 5720548, at *2 (C.D. Cal. Nov. 6, 2017) (noting "weight of available authority indicates there is no duty to mitigate statutory damages in . . . TCPA cases" (internal quotation, citation, and alteration omitted)) (collecting cases).

Accordingly, to the extent Mayvenn relies on lack of standing, it has not shown it is entitled to summary judgment.

B.   **Established Business Relationship**

The TCPA does not apply to "calls made to any person with whom the caller has an [EBR]." See 18 FCC Rcd. 14014, 14042-43 (2003).[4] An EBR is defined, in relevant

---

[4] District courts are bound by final orders of the Federal Communications Commission ("FCC"). See Mims, 565 U.S. at 371 (noting TCPA delegates authority to FCC to prescribe implementing regulations); Wilson v. A.H. Belo Corp., 87 F.3d 393, 396 (9th Cir. 1996) (noting courts of appeal have "exclusive jurisdiction to review the validity

5

part, as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber . . . on the basis of the subscriber's inquiry or application regarding the products or services offered by the entity within three months immediately preceding the date of the call, which relationship has not been previously terminated by either party." See 47 C.F.R. § 64.1200(f)(5).

Mayvenn contends Trim created an EBR "when she entered [its] sweepstakes for a chance to win free products and services offered by Mayvenn." (See Mot. at 17:3-5.)[5] In response, Trim argues that, although the FCC has not addressed the question of whether a consumer's sweepstakes entry can create an EBR for purposes of the exemption contained in the TCPA, the Court should adopt the Federal Trade Commission's ("FTC") interpretation of an identical EBR exemption contained in the Telemarketing Sales Rule ("TSR") (see Opp. at 8:3-16); see also 16 C.F.R. § 310.2(q), specifically, the FTC's statement in a report to Congress that the submission of a "sweepstakes entry form does not create an [EBR] for purposes of the TSR," see 2016-2017 FTC Biennial Rep. to Congress 7 (hereinafter, "FTC Biennial Rep.") (noting businesses may not "circumvent the [NDNC] Registry by utilizing sweepstakes entry forms as a way to exploit the [EBR] exemption"). As set forth below, the Court finds Trim's argument persuasive.

In early 2003, the FTC amended the TSR's do-not-call rules and created the NDNC Registry to "provide a mechanism that a consumer may use to indicate that he or she finds unsolicited telemarketing calls abusive and an invasion of privacy," and to

---

of FCC rulings").

[5] Although Trim claims she "does not recall entering the sweepstakes" (see Opp. at 7:26-8:1), Mayvenn has submitted evidence that it received a sweepstakes entry form bearing Trim's name, email address, and phone number (see Decl. of Robert Choi in Supp. of Mayvenn's Mot. for Summ. J. (hereinafter, "Choi Decl.") ¶ 6, Ex. D) from an Internet Protocol address located in the city where Trim resided with her mother at the time of the submission (see id.; Decl. of Gregory Cancilla (hereinafter, "Cancilla Decl.") Ex. B ¶¶ 2.0.2, 5.0.6; Trim Dep. at 146:9-8; Burshteyn Decl. ¶ 3, Ex. B at 2:2-4) and owned by the internet service provider to which Trim's mother was subscribed (see Cancilla Decl. Ex. B ¶¶ 5.0.6, 5.0.9; Burshteyn Decl. ¶ 3, Ex. B at 2:2-4).

"protect . . . consumer[s] from repeated abusive calls from a seller or telemarketer." See 68 Fed. Reg. 4580-01, 4580, 4631 (Jan. 29, 2003). Shortly thereafter, Congress directed the FCC to "consult and coordinate with the [FTC]" to "maximize consistency" between the do-no-call rules in the TCPA and TSR. See 15 U.S.C. § 6153. Pursuant to said directive, the FCC adopted the FTC's NDNC Registry and amended the TCPA's EBR exemption to mirror the EBR exemption in the TSR. See 18 FCC Rcd. at 14033-35, 14076-81. In so doing, the FCC emphasized that the EBR exemption is "an area where consistency between the FCC rules and FTC rules is critical for both consumers and telemarketers." See id. at 14079.

In light of the above, the Court finds the TCPA's EBR exemption should be construed in a manner that "maximize[s] consistency" with the identical exemption provided for in the TSR. See 15 U.S.C. § 6153. Consequently, the Court holds that Mayvenn may not "circumvent the [NDNC] Registry by utilizing [Trim's] sweepstakes entry as a way to exploit the [EBR] exemption." See FTC Biennial Rep. at 7.

Accordingly, to the extent Mayvenn relies on the EBR exemption, it has not shown it is entitled to summary judgment.[6]

**C.    Business Subscriber**

The NDNC Registry applies only to calls made to "residential subscribers" and "does not preclude calls to businesses." See 20 FCC Rcd. 3788, 3793 (2005). "[W]ireless subscribers who ask to be put on the [NDNC Registry]" are "presumed . . . to

---

[6] Although Mayvenn cites to Morris v. Modernize, Inc., Case No. AU-17-00963-SS, 2018 WL 7076744 (W.D. Tex. Sept. 27, 2018), a case in which a plaintiff's submission of an online form was found to constitute "prior express written consent" to receive telemarketing messages (see Mot. at 17 n.12), Mayvenn, as Trim points out, does not seek summary judgment on the ground of prior express consent. Moreover, Morris is distinguishable on its facts, there being no showing that Mayvenn's purported consent provision, which was contained in a general privacy policy on a separate page of its website (see Choi Decl. ¶¶ 2, 4-5, Exs. A-C), was "clear and conspicuous as a matter of law," see 2018 WL 7076744, at *3 (noting disclosure was "located directly underneath the button used to submit the web form," "obvious to the eye," and "plainly visible"); see also 47 C.F.R. § 64.1200(f)(9)(i) (requiring "clear and conspicuous" disclosure); Van Patten, 847 F.3d at 1044 (noting defendant bears burden to prove prior express consent).

be residential subscribers." See 18 FCC Rcd. at 14039.  Such presumption, however, is rebuttable, and "a complaining wireless subscriber" may be required "to provide further proof of the validity of that presumption."  See id.

Here, Trim is presumed to be a residential subscriber because the phone number at issue is listed on the NDNC Registry.  Mayvenn argues that, nevertheless, the phone number does not qualify for protection under the TCPA's do-not-call rules because Trim "has used [it] . . . as a business number."  (See Mot. at 19:9-10.)

The FCC has "decline[d] to exempt from the do-not-call rules . . . calls made to 'home-based businesses.'"  See 20 FCC Rcd. at 3793.  Rather, the FCC "review[s] such calls as they are brought to [its] attention to determine whether or not the call was made to a residential subscriber."  See id.  "Courts have routinely looked at the facts and circumstances surrounding a particular case before deciding whether TCPA protection extended to a particular telephone number that was used for both business and residential purposes."  Blevins v. Premium Merch. Funding One, LLC, Case No. 2:18-cv-337, 2018 WL 5303973, at *2 (S.D. Ohio Oct. 25, 2018) (collecting cases).  "Where there is clear evidence that a cell phone line is used only or primarily as a business line, courts have granted summary judgment to defendants."  Smith v. Truman Road Dev., LLC, Case No. 4:18-cv-00670-NKL, 2020 WL 2044730, at *11 (W.D. Mo. Apr. 28, 2020) (collecting cases).  "[W]here there is evidence supporting both the contention that the [p]laintiff's phone number was a residential number and that the phone number was a business number," however, "a disputed issue of material fact inappropriate for summary judgment" may exist.  See id. (internal quotation and citation omitted).

In this instance, the Court finds there is a dispute of material fact as to whether Trim qualifies as a "residential subscriber" for purposes of the TCPA.  See 20 FCC Rcd. at 3793.  In particular, although Mayvenn has submitted evidence that Trim uses her cellular phone number to make "sales calls" to prospective customers of her employer, Impact Merchant Solutions, there is also evidence that she uses a separate, employer-

provided number for "customer service calls." (See Trim Dep. at 76:20-77:19.)[7] Further, although there is evidence that Trim, on one occasion, while appearing as a guest on a videotaped program in which she was identified as an employee of Impact Merchant Solutions and was asked to give money-saving tips for certain types of businesses, invited viewers to "text or call" her cellular phone number (see Burshteyn Decl. ¶ 6, Ex. F), there is also evidence that said number has been Trim's only personal phone number for over ten years, is subscribed under her name, and is billed to and paid for entirely by Trim (see Trim Dep. at 23:23-24:20, 77:20-22, 120:13-24).[8] Consequently, drawing all inferences in favor of Trim, see Matsushita, 475 U.S. at 587, the Court finds a reasonable jury could conclude Mayvenn's texts were sent to a residential subscriber.

Accordingly, to the extent Mayvenn seeks to characterize the phone number at issue as a business number, it has not shown it is entitled to summary judgment.

//
//
//

---

[7] In an affidavit submitted after the filing of the instant motion, Trim asserts she uses her employer-provided phone number to make both sales calls and service calls. (See Aff. of Lucine Trim ¶ 7.)  As Mayvenn points out, however, such assertion contradicts Trim's prior deposition testimony (see Trim Dep. at 76:20-77:19), and, consequently, will not be considered by the Court, see Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir. 1991) (noting "party cannot create . . . issue of fact by . . . affidavit contradicting [her] prior deposition testimony").

[8] The cases cited by Mayvenn are readily distinguishable, in that there was no apparent personal use, see Bank v. Indep. Energy Grp. LLC, Case No. 12-cv-1369 (JG)(VMS), 2015 WL 4488070, at *1-2 (E.D.N.Y. July 23, 2015) (holding "no reasonable juror could find" plaintiff's number was residential, where it was used "as his law office [phone] number in pleadings and court filings, in professional correspondence," on "a directory of attorneys," and "on his business card, . . . attorney registration form, . . . [and] tax returns for his law practice"); Chennette v. Porch.com, Inc., 484 F. Supp. 3d 912, 914 (D. Idaho 2020) (rejecting argument that "TCPA cover[s] residential home[-]based . . . business[] subscribers" (internal quotation and citation omitted)), and/or the calls at issue were "directed and made to the business use of the cellphone [number], . . . not to [its] personal use," see Shelton v. Target Advance LLC, Case No. 18-2070, 2019 WL 1641353, at *5 (E.D. Penn. Apr. 16, 2019) (finding calls "about business loans" were directed to cellular phone's "business use"); see also Chennette, 484 F. Supp. 3d at 913-15 (finding calls "sell[ing] leads . . . for potential business" were directed to "contractors operating as a business").

**CONCLUSION**

For the reasons stated above, Mayvenn's motion for summary judgment is hereby DENIED.

**IT IS SO ORDERED.**

Dated: April 5, 2022

MAXINE M. CHESNEY
United States District Judge